## WRIGHT VS. HARDY.

EVIDENCE: *Opinion of expert on facts stated by another witness—Error in refusing evidence, cured—Testimony of parties.*—VERDICT, *in civil cases.*

1. In an action for damages for that the plaintiff "wrongfully, carelessly, negligently and unskillfully performed" an amputation of a limb, evidence that "the point of amputation was too high, and that the danger of death was somewhat increased by the selection of that point," was admissible.

2. Where a witness for the plaintiff had testified as to the manner in which the amputation had been performed, and the case afterwards treated, the defense were entitled to ask an expert who had heard the testimony, whether, supposing the same to be true, the amputation was well performed and the treatment proper.

3. But the error of ruling out this question was cured by permitting defendant's counsel to question the witness upon a hypothetical case founded upon his understanding of the testimony of said witness.

4. Under sec. 51, ch. 137, R. S., and before ch. 41, Laws of 1867, took effect, where the plaintiff sued as administrator of a deceased person, the defendant could not testify in his own behalf, although the plaintiff, as a witness for himself, might have testified to conversations and transactions between himself and the defendant, as well as to others between the defendant and the deceased in his presence.

5. In civil actions the jury should find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt, or do not exclude the truth of any other theory.

ERROR to the Circuit Court for *Fond du Lac* County.

The action below was by *Emily C. Hardy*, administratrix of the estate of Silas B. Hardy, against *Wright*, for alleged malpractice by him, as a physician and surgeon, causing the death of said Silas. Defendant amputated the leg of the deceased, above the knee; and the complaint alleges, among other things, that he " wrongfully, negligently and unskillfully performed said amputation, and wrongfully, negligently and unskillfully dressed and treated the stump of said leg," etc., and that the death of the deceased was caused by such such amputation and treatment. The exceptions taken to the ruling of the court in respect to the admission of evidence, sufficiently appear from the opinion. The defendant asked the following instructions successively, which were refused: 1. " In cases of this kind, when the finding of the jury depends upon indirect or circumstantial proof, the plaintiff is required to satisfy the jury of the truth of her hypothesis to a moral certainty, and by such proof as will actually exclude the truth of any other theory." 2. " If the defendant's evidence convinces the jury that the death of the party may have happened from other causes, consistent with the proof, than the act of the defendant, he is entitled to a verdict." The court then instructed the jury that plaintiff would not be entitled to a verdict unless they were satisfied from the evidence that the death was caused by malpractice of defendant, either in the amputation or subsequent treatment; but that the rule of criminal trials, that the jury must be satisfied beyond a reasonable doubt, did not apply here.

Verdict for plaintiff, for $4,000; new trial denied; and judgment on the verdict; to reverse which *Wright* brought the present action.

*E. S. Bragg*, for the plaintiff in error, argued that the testimony that the point of amputation was too high should

have been excluded, and as to the rule in construing pleadings cited 2 Kern., 201. 2. To the point that it is admissible to ask an expert who has heard the testimony of another witness as to the mode in which an operation was performed, whether, supposing that testimony to be true, the operation was well performed, counsel cited 7 Barb., 322; 5 Seld., 195; Wharton & Stille, § 94, and cases there cited; Elwell's Malpractice; 1 Phillipps on Ev. (7th Am. ed.), 290; 1 Greenl. Ev. (10th ed.), § 440. The defendant was prejudiced by the exclusion of such evidence here. The treatment described by the plaintiff's witness, Knapp, ran through several weeks. A hypothetical case put by counsel could not cover the whole ground so as to prevent the formation of a double issue with some of the jurors. If, in such a statement, any omission be made, material or otherwise, the surgeon's opinion thereon will be of no avail. The juror will say that the case was not stated to the surgeon as the witness swore to it; and if a single item is omitted which *he* (such juror) deems material, the opinion goes for naught. In a case like this, the rights of the medical profession require that every pretext shall be removed from the mind of the juror for following his sympathy, when the rules of science imperatively demand an opposite verdict. 3. The question as to the circular method of amputation should have been admitted. Its object was to show that the presence of muscle sufficient to cover the bone was not essential. 4. It was error to exclude the evidence of *Wright,* after the plaintiff had been permitted to testify generally in a cause in which the judgment would enure to her benefit, under sec. 13, chap. 136, R. S. The spirit of the statute relative to the testimony of parties (sec. 2, chap. 138, R. S.) requires *equality* between the parties. 5. The first instruction asked for defendant should have been given. Circumstantial evidence to sustain any

given hypothesis must exclude the truth of every other hypothesis, or it does not rise to the dignity of proof. 1 Starkie on Ev. (6th Am. ed.), 509. The second instruction should also have been given. Sec. 12, chap. 135, R. S.

*Matt. H. Carpenter*, for defendant in error:

1. After a divorce or the death of the husband, the wife was a competent witness at the common law (where not a party nor interested), except that she could not disclose communications made to her by her husband. 7 Vt., 5–6; 1 Greenl. Ev., § 337, and cases there cited; *Wells v. Tucker*, 3 Bin., 366; *Walker v. Sanborn*, 46 Me., 470; *Woolley v. Turner*, 13 Ind., 253; *State v. Dudley*, 7 Wis., 667; *Cooper v. Lloyd*, 95 E. C. L., 519. Sec. 50, chap. 137, R. S., removes the objections that *Mrs. Wright* was a party and was interested. *Barnes v. Martin*, 15 Wis., 246; *Birdsall v. Dunn*, 16 id., 235; *Hobby v. Bank*, 17 id., 169; *Hays v. Hays*, 19 id., 182; *Lawrence v. Vilas*, 20 id., 381. 2. By section 51, chap. 137, R. S., *Wright* could not be examined as a witness, the opposite party suing as administratrix. 3. To the point that an expert cannot be asked for an opinion based upon the evidence of another witness which he has heard, but that a hypothetical case must be stated to him, counsel cited 1 Greenl. Ev., § 440; *Sills v. Brown*, 9 C. & P., 601; *Luning v. The State*, 1 Chand., 178; *U. S. v. McGlue*, 1 Curtis C. C., 1; *State v. Powell*, 2 Halst., 244. Counsel also argued the other objections made by the plaintiff in error.

DIXON, C. J. 1. The first error assigned is, that the court erroneously admitted testimony tending to show that the place of the amputation complained of was not the proper one, and increased the danger to the life of the patient. Dr. Dousman, a medical witness examined on the part of the plaintiff below, testified " that the point of amputation was

too high, and that the danger of death was somewhat increased by the selection of that point." This was objected to by the defendant below (now plaintiff in error), because the manner of the amputation, and not the place of it, was the gist of the plaintiff's action, as alleged in the complaint. The allegation is, "that the defendant wrongfully, carelessly, negligently, and unskillfully performed said amputation," etc. We are of the opinion that the testimony received was not objectionable under the allegation. It is a matter, if not of common, certainly of professional, experience, that in many cases of amputation the care and skill of the surgeon is involved as much in the selection of the point of amputation as in the manner of its performance after the point has been selected. This appears to have been such a case, and the selection of the point may with propriety be said to have been part of the performance itself. When, therefore, it is charged that the amputation was carelessly or unskillfully performed any want of proper care or skill in the selection of the place seems necessarily to be included. The objection, if any really exists, seems rather to be that the complaint is not sufficiently specific and certain, which could only have been reached by motion.

2. The next alleged ground of error is, that the court improperly rejected an explanation of the circular method of amputation, as offered to be shown by the defendant by the testimony of a medical witness. The purpose of this offer seems to have been, to show that in the circular method of amputation the use of muscle or integument sufficient to cover and protect the end of the bone is discarded by many of our most skillful surgeons. The amputation in question was performed by what is known among surgeons as the flap method; and one of the chief causes of complaint against the defendant was, that he cut the flaps, especially the upper one, too short, so that it was impossible to bring

them together when the leg of the patient was placed in the natural horizontal position, as he was lying upon his bed. The court rejected the explanation of the circular method, for the reason that it was immaterial. No light has been thrown upon this question, either by the arguments of counsel or our own investigations, which enables us to say there was any error in this ruling. The materiality of the evidence to this case is not apparent, more particularly when it is considered that the unfortunate result of the operation is to be ascribed, not to any undue exposure of the bone, but to the position in which the limb was required to be placed in order to bring the flaps together. It was elevated, as some of the witnesses testify, to an angle of about forty-five degrees, and caused the patient great pain and irritation whenever an attempt was made to straighten it. This elevation prevented the natural and ordinary discharge which might otherwise have taken place from the wound, and caused the pus and other unhealthy secretions to remain in the limb, and to fall back until a sinus was formed above the hip, which discharged copiously. It was in this way, as is claimed, that the shortness of the flaps, or lack of muscle preserved, tended to increase the danger of death to the patient; and we agree with the learned judge before whom the cause was tried, that the testimony offered was strictly immaterial.

3. The third error assigned is in rejecting the testimony of experts upon the case as made by the plaintiff's witness Knapp. After having shown by the medical expert that he had heard the testimony of the witness, he was questioned as follows: "Suppose his statement relative to the amputation and its subsequent treatment to be truthful, was or was not the amputation well performed? Was the subsequent treatment of the patient proper or improper? And, in your opinion, was or was not the death of the patient the result

of any neglect or want of skill in the surgeon?" To these questions objection was taken on the part of the plaintiff, and the objection sustained by the court; but the counsel for the defendant was allowed to and did question the adept upon a hypothetical case stated to him by the counsel, formed on the counsel's understanding of the testimony of any witness, and such questions were answered. There is some conflict of decisions as to the admissibility of questions in the form here put and rejected; some courts holding that the witness may be asked for his opinion only on an assumed state of facts; others, upon the evidence given on trial, if he heard it, viewing it as a case stated; and others still, that the latter course is not proper except where the facts are admitted, or not disputed. The decided weight of authority seems to be in favor of the rule secondly above stated, and consequently in favor of the admissibility of the questions here put. For ourselves, we can see no reasonable objection to it. The sole object of all rules upon the subject is, that the questions shall be so framed as not to require the expert to give an opinion upon the credibility of the testimony and truth of the facts, which are purely questions for the jury. The questions asked required no expression of opinion as to the credibility of the testimony or truth of the facts deposed to by the witness Knapp. The case stated—" supposing Knapp's statement to be truthful "— was purely hypothetical, and in this respect seems to us to be fully in harmony with what should be the legal rule in such cases. And so we understand the decision of our own court in the case cited from 1 Chandler, 178; for the court say: " The facts, as given in evidence, might have been stated to the witness, and then his opinion upon them would have been competent; or he might have given his opinion upon a similar case, hypothetically stated." It follows, therefore, that the court erred in rejecting the questions;

and the question then arises, whether the error was cured by allowing them to be put and answered in the other form. We are inclined to think it was. It is manifest that it is but a matter of difference in the forms of putting the same question, neither of which can be said to possess any decided advantage over the other. The opinion of the adept upon the same supposed state of facts can be readily obtained by either. In the one, the statement of the witness is taken as a supposed case; in the other, the statement is repeated by counsel, or a case stated exactly corresponding, and the opinion of the adept is required upon that. We do not see how the plaintiff in error could have been prejudiced.

4. The fourth assignment of error is, that the court erred in the rejection of the defendant as a witness. The plaintiff, the widow of the deceased, who sued as administratrix of his estate, was examined as a witness in her own behalf, and testified to conversations and transactions had between herself and the defendant, and between the defendant and the deceased in her presence. The defendant offered himself as a witness, but was rejected. There is no doubt about the inequality of the rule thus established; but we see no escape from it under the statute. It is the capacity in which the opposite party sues or defends, and not the nature of the testimony, which settles the question of the competency of the other party to be examined as a witness in his own behalf. R. S., ch. 137, sec. 51. The New York code, sec. 399, makes provision for such cases by declaring that where executors, administrators, heirs-at-law, next of kin, or assignees shall be examined on their own behalf, in regard to any conversation or transaction had between the deceased person and the assignor, or other party to the action, respectively, then the assignor or the other party may be examined in regard to such conversation or transaction, but not in regard to any new matter. And our own legis-

lature, by an act passed at the last session (Laws of 1867, ch. 41), have in part remedied the evil by providing that a party may in all cases be examined as a witness in relation to any conversation, transaction or matter, as to which the opposite party has given evidence upon the trial, and which did not occur or take place with or in presence of the deceased, or insane person, or persons otherwise legally incapacitated from giving testimony. There was no error in rejecting the defendant as a witness on his own behalf.

5. Lastly, there was no error in the giving or refusing of instructions. This is a civil action; and there is a distinction between civil and criminal actions in respect to the degree or quantity of evidence necessary to justify the jury in finding their verdict for the government. In civil actions, their duty is to weigh the evidence carefully, and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt, or do not actually exclude the truth of any other theory. 3 Greenleaf on Ev., sec. 29. The instructions given were sufficiently favorable to the defendant.

*By the Court.*—Judgment affirmed.