# CASES DETERMINED

AT THE

## *January Term, 1875.*

| | 37 | 31 |
| | 96 | 52 |

BLAESER VS. MILWAUKEE MECHANICS' MUTUAL INSURANCE COMPANY.

| | 37 | 31 |
| | 115 | 515 |

EVIDENCE. (1) *Preponderance of, sufficient in civil actions, though act to be proved be criminal.*

| | 37 | 31 |
| | 117 | 252 |

INSURANCE. (2) *Fraudulent misrepresentation by assured avoids risk when policy so provides.*

1. Where the defense to an action upon a policy of insurance is, that the fire by which the insured property was destroyed was caused by plaintiff's willful act and procurement, the jury should determine that issue upon the preponderance of evidence, as other issues in civil actions are determined; and it is not necessary that they should be satisfied "beyond a reasonable doubt," as in case of a criminal prosecution for arson. *Pryce v. Security Ins. Co.*, 29 Wis., 270, and *Freeman v. Freeman*, 31 id., 235, distinguished and explained.

2. Where a policy of insurance stipulates that any fraudulent misrepresentation by the assured of a fact material to the risk shall avoid the contract, the insurer may defend on the ground of such a fraudulent misrepresentation, without having offered to return the premium.

APPEAL from the Circuit Court for *Milwaukee* County.

Action upon a policy of insurance upon a flour and grist mill, issued to one Tietgen and the plaintiff. *Blaeser* was part owner of the mill, and had a mortgage on Tietgen's interest; and the insurance was, in case of loss, made payable, by the terms of the policy, to him. The complaint sets forth the contract of insurance, alleges the total loss by fire of the

insured property, due notice and proof of loss, and demands judgment for $3,000, the sum insured. The defenses set up are: 1. That the plaintiff falsely represented in the application for insurance that the cash value of the mill was $8,000, although its actual value was not more than $3,000. 2. That the parties insured warranted that the cash value of the mill was $8,000. 3. That in the proof of loss, the plaintiff falsely and fraudulently represented and made oath that the cash value was $7,000, whereas, it was not more than $3,000. 4. That, in the proof of loss, the plaintiff willfully and falsely stated on oath that he did not know how the fire originated. 5. That in the proof of loss he falsely made oath that the fire by which the mill was destroyed did not originate by any act, design or procurement on his part; and the answer charges that he willfully caused it. 7. That in the application for insurance, the parties insured warranted to, and agreed with, defendant that a saw mill on the east side of the mill insured was forty feet distant, while the answer alleges that it was only thirty-six feet therefrom.

On the trial at the circuit, the court, on motion of the plaintiff, excluded all evidence under the answer except as to the fourth and fifth defenses. The defendant read in evidence the policy, one of the conditions of which was: "If any person insuring any building or personal property in this company shall make any misrepresentation or concealment, or if, after the insurance has been effected, either by original policy or the renewal thereof, the risk shall be increased by any means whatever within the control of the assured, such insurance shall be void and of no effect. * * If there appear any fraud or false swearing, the assured shall forfeit all claim under this policy." The application for insurance was also read in evidence, wherein, in answer to the question as to the cash value of the property, the applicant answered that it was $8,000, and, as to exposure, that on the east, forty feet distant, was a water power saw mill, with steam engine for about half of the

time. The application contained a declaration that the several representations therein made were warranties by which the applicant would be bound. Evidence for the defense was also given that *Blaeser* and Tietgen each owned a half interest; that the plaintiff had a mortgage on Tietgen's half for $2,900; that plaintiff's interest was unproductive; and that the mill was in bad condition. Tietgen testified that *Blaeser* came the afternoon before the fire and took away his share of the grain and feed in the mill; that there had been no fire in the mill for a fortnight before the fire; that he had a key to the mill and *Blaeser* another, and that he locked the mill the day before the fire and left it between 6 and 7 o'clock; that at the fire he noticed *Blaeser's* hair full of spider webs and flour dust; that *Blaeser* had insurance on the mill for $2,500 in another company. Several witnesses testified that the value of the mill at the time of the insurance was from $3,000 to $4,500. The defense, also, gave evidence of circumstances tending to show that the plaintiff had willfully caused the fire, and called Dr. Charles Conrad, who testified that about three o'clock in the morning when the mill was destroyed, he was passing the mill, having been in attendance on a patient, when he saw a light in the mill; that it rapidly increased; that he turned towards the mill, and, when within a few feet of it, the door opened and the plaintiff sprang out and ran from the mill toward the witness, and when the witness called him by name, he turned and ran in another direction; that he had a conversation with plaintiff since the fire, in which he told the plaintiff he would keep the matter secret if the plaintiff would not make claim upon the insurance company, and would indemnify Tietgen for his loss.

On the part of the plaintiff, testimony was given that the value of the mill was from $4,000 to $6,000. The plaintiff, as a witness in his own behalf, testified that he was not present in the mill at the breaking out of the fire; and denied the conversation testified to by Conrad. He also produced evidence

tending to show that at the time of the breaking out of the fire he was at home in bed, and tending to discredit the witness Conrad.

The court instructed the jury, in substance, that, although there may be misrepresentations in the application for insurance, the company can not avail themselves of them in an action upon the policy, unless they first tender back to the insured the amount of the premium; and that they must be satisfied beyond a reasonable doubt that *Blaeser* either fired the mill, or procured it to be fired and burned, before they could find against the plaintiff, and that the same rule would be applied in this case as though they were trying the plaintiff for the crime of arson.

Many exceptions were taken to other rulings of the court, which are not noticed in the opinion. Verdict for the full amount claimed; from judgment upon which the defendant appealed.

*Winfield Smith,* for the appellant, argued *inter alia,* that, if a representation made by the assured is false and is material, the policy is avoided. May on Insurance, 190 *et seq.*; 1 Marshall on Insurance, 450; 1 Arnold on Insurance, 487; 1 Phillips on Insurance, 302; Flanders on Fire Insurance, 202, 327, 330. Representations as to *value* are always material. A false warranty avoids the risk. May on Ins., 160; 1 Mar. on Ins., 347; 1 Arn. on Ins., 492; 1 Phil. on Ins., 410; 1 Fland. on Fire Ins., 204. No distinction can be drawn between warranty of value and other warranties after the fact of value is found by the jury. *Babbitt v. Ins. Co.,* 66 N. C., 70 (8 Am. R., 494, 497–8); *Sturm v. Great Western Ins. Co.,* 40 How., N. Y.,423; *Shaw v. St. Lawrence Ins. Co.,* 11 Upper Canada Q. B., 73; *Carpenter v. Am. Ins. Co.,* 1 Story, 57; *Catron v. Tenn. Ins. Co.,* 6 Humph., 176; *Hersey v. Merrimack Ins. Co.,* 7 Foster, 149; *Protection Ins. Co. v. Hall,* 15 B. Mon., 411; *Am. Ins. Co. v. Gilbert,* 13 Am. Law Reg., 460 (July, 1874). The court below erred in instructing the jury that to establish the defense that the plaintiff willfully

set the mill on fire, they must find him guilty, beyond a reasonable doubt. Preponderance of evidence is sufficient. It is not sound argument that one must prove the commission of an act injurious to him by more evidence, when that act is also forbidden by statute, than when the penal law has not yet condemned it. He commented on *Thurtell v. Beaumont*, 1 Bingham, 339; *McConnel v. Delaware Ins. Co.*, 18 Ill., 228; *Thayer v. Boyle*, 30 Me., 475; *Pryce v. Security Ins. Co.*, 29 Wis., 270; *Freeman v. Freeman*, 31 id., 240, which have seemed to cast doubts upon the rule of preponderance of evidence, and cited in support of the rule, *Washington Ins. Co. v. Wilson*, 7 Wis., 169; *Crabtree v. Reed*, 50 Ill., 206; *Burnett v. Ward*, 42 Vt., 80; *Knowles v. Scribner*, 57 Me., 495; *Ellis v. Buzzell*, 60 Me., 209; *Folsom v. Brawn*, 5 Foster, 14; *Wightman v. Ins. Co.*, 8 Robinson, La., 442; *Hoffman v. Ins. Co.*, 1 La. Ann., 216; *Schmidt v. Ins. Co.*, 1 Gray, 529; *Catron v. Tenn. Ins. Co.*, 6 Humph., 176; *Gordon v. Parmalee*, 15 Gray, 413; *Munson v. Atwood*, 30 Conn., 102; May on Ins., § 583; 1 Phil. on Ev., 834 (note) ed. 1868; id., 614; *Scott v. Home Ins. Co.*, 1 Dillon, 105; *Conner v. State*, 34 Texas 659; *Dorsey v. State*, id., 651.

*Foster, Coe & Hedding*, for the respondent, argued that the company could not repudiate the contract and retain the price. There can be no fraud without a *scienter*. Fraud cannot be predicated on a representation of *value*, which rests on opinion. Kerr on Fraud and Mistake, 83; Angell on Ins., § 150; Sedg. on Dam., 593; *Ins. Co. v. Cotheal*, 7 Wend., 79. Warranty of value is not applicable to mutual insurance companies, as in such, the insurer puts valuation on property as much as applicant. Defense should show that insurer had knowledge which insured had not. Counsel relied on remarks of Chief Justice DIXON in *Pryce v. Security Ins. Co.*, 29 Wis., 276, to sustain the instruction of the court as to amount of proof that plaintiff fired the mill.

COLE, J. It would be a work of considerable labor to notice

all the exceptions taken to the rulings of the court on the trial of this cause, and we shall not attempt to do so. Our attention will be confined to exceptions taken to one or two portions of the charge of the court, which we deem fatally erroneous and of a character calculated to prejudice the rights of the defendant.

The action was upon a policy of insurance. Among other defenses, the company set up in the answer and relied upon the defense, that the fire by which the insured property was destroyed originated through the willful act and procurement of the plaintiff. In the general charge, and likewise upon the jury coming into court for further directions, the court instructed, in substance, that where the company sets up such a defense to defeat a recovery upon the policy, it should be held to precisely the same rule in respect to the degree or quantity of evidence that would warrant the jury in finding the plaintiff guilty on a trial for the crime of arson; and that unless they were satisfied beyond a reasonable doubt of the plaintiff's guilt, they must find in his favor upon that issue. This instruction, which imported into the trial of a civil cause the rule applicable to criminal cases, was, we think, erroneous. It required the defense to be established by full proof beyond a reasonable doubt, and directed that no evidence less cogent would justify the jury in finding for the company. It is familiar doctrine in criminal trials, that the truth of the charge must be established by the prosecution beyond a reasonable doubt, and unless that degree of conviction is produced upon the minds of the jury, it is their duty to acquit the accused. This was a rule originally adopted *in favorem vitæ*, in the days of a severe sanguinary penal code, when the consequences of an erroneous conviction were irreparable. But we see no satisfactory reason for applying the same rule to civil causes, which frequently must be decided upon the preponderance of evidence. It is true there are a few authorities which hold that where the defense to an action involves the proof of a crime, the fact must be estab-

lished by the same direct positive evidence as though the party implicated were on trial for the criminal offense. But it seems to us the reason and weight of judicial opinion is the other way, and in support of the rule adopted by this court in *Washington Union Ins. Co. v. Wilson*, 7 Wis., 169. It was there held that in an action upon a policy of insurance, where the defense was that the plaintiff willfully set fire to the building insured, the rule of evidence was the same as in other civil cases, and the jury must determine the issue upon the weight or preponderance of evidence. This case was followed in *Wright v. Hardy*, 22 Wis., 348. It is suggested that these cases are in conflict with the subsequent decisons in *Pryce v. Security Ins. Co.*, 29 Wis., 270, and *Freeman v. Freeman*, 31 id., 235, and must be considered as overruled. But this is not our understanding of those decisions. In *Pryce v. Security Ins. Co.*, the chief justice, while considering the correctness of an instruction given at the request of the plaintiff as to the degree or quantum of proof required to establish the defense that the plaintiff set fire to the building insured, refers to the rule laid down in *Washington Union Ins. Co. v. Wilson*, and cites rather approvingly some authorities which hold differently, but says that it was immaterial whether the court was right or wrong in giving the instruction, because there was really no evidence to which such a request could apply. It seems to me, however, that the chief justice was mistaken in supposing that Prof. Greenleaf approved the doctrine of those cases which hold that the rule upon this question is the same in civil and criminal cases. In 1 Greenl. Ev., § 65, I understand the learned author to be considering quite a different question, namely, variance between the allegation and proof in criminal prosecutions; while in 3 Greenl. Ev., § 29, the distinction is noted between civil and criminal cases in respect to the degree or quantity of evidence sufficient to justify the jury in deciding the fact in issue. The cases in Maine cited by the chief justice in opposition to the doctrine in 7 Wis. are greatly shaken, if not

directly overruled, by *Ellis v. Buzzell*, 60 Me., 209. But it seems to us there is nothing in the case in the 29 Wis. which warrants the inference that the court in the decision there made intended to overrule the doctrine of the previous cases on this question. In civil actions it is the duty of the jury to weigh the evidence carefully, and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt. 3 Greenl. Ev., § 29; *Wright v. Hardy, supra,* 356. *Freeman v. Freeman* was an application for a divorce on the part of the wife on the ground of cruel and inhuman treatment. The husband recriminated, charging the wife with adultery. This court thought that such a charge should not only be sustained by a preponderance of testimony, but should be affirmatively established to the satisfaction of the court beyond a reasonable doubt. And the reason for the rule is given, that the action partakes strongly of the nature of a criminal proceeding, so much so as to make it necessary that the party making the charge of adultery should establish the truth of the fact to a reasonable and moral certainty. But the rule may well be held to apply to an action for a divorce, which is not at all analogous to a case like the one at bar. The former is not unfrequently attended with the most serious and painful consequences; destroying the family; leaving a stain upon the name of innocent offspring; and affecting the property rights and civil *status* of the parties. It would seem, therefore, eminently proper, in giving judgment which is followed by such results, that the court should proceed with great caution, and require that the charge of adultery be proven by evidence which will "satisfy the human mind, and leave the careful and guarded judgment of the court free from any conscientious and perplexing doubts as to whether the charge be proved or not." But no such rule would seem applicable or called for in an action to recover on a policy of insurance. If the company attempts to defeat a recovery upon the ground that the plaintiff willfully destroyed the property insured, it must of course

establish its defense to the satisfaction of the jury; but this may be done by the preponderance of evidence, although it be not free from reasonable doubt.

But the counsel for the plaintiff insists that the company really produced no evidence on the trial which tended to show that the plaintiff set fire to the mill destroyed, and that, consequently, whether the charge we have been considering was right or wrong, it could not possibly have prejudiced the defendant. But this position, we think, is not sustained by the record. There was evidence sufficient to carry the question to the jury, that the plaintiff set fire to the property. We shall not dwell upon it, and it would manifestly be improper for us to express any opinion upon its weight or credibility. These are questions for the consideration of the jury alone. It is said that the testimony, for instance, of Dr. Conrad was improbable and unworthy of credit. However this may be, it is plain that it should have been submitted, with all other circumstances and facts bearing upon the issue, with proper instructions, for the decision of the jury.

There is another portion of the charge excepted to, which we deem it proper and necessary to notice, which is where the court instructed the jury that although there might be misrepresentations in the application, yet the company could not avail itself of them in an action upon the policy, without first tendering back to the insured the amount of premium paid. The learned circuit judge held upon this point that the rule in regard to the rescission of contracts for fraud was applicable; that when a party seeks to avoid a contract on that ground, he must put the other party to the contract back to the condition in which he stood prior to the transaction. This is undoubtedly a well settled rule in regard to the rescission of contracts; but we think it has no application to the case before us, and for this reason. By the condition of the policy itself, any fraudulent misrepresentations of a fact material to the risk avoids the contract. It is not necessary that the company refund the pre-

mium in order to avail itself of this stipulation in the policy. The representations in the application constitute the basis upon which the risk is taken, and the policy declares that if there is any misrepresentation or concealment the insurance shall be void and of no effect. The company enters into the contract relying upon the truth of the representations; and if it has been misled or deceived upon matters material to the risk, it may well say that no contract was ever made; that there was no concurrence of assent upon the same facts. In this case the insured declared that the several representations made in the application by way of answer to the questions asked, were "*made warranties*," by which he was bound; and we know of no case which holds that if the property is not as warranted, or there are fraudulent representations in a matter material to the risk, the company cannot avail itself of that defense unless it first tender back to the insured the premium paid. In *Campbell v. New England Mutual Life Ins. Co.*, 98 Mass., 381, Justice WELLS says: "Representations to insurers, before or at the time of making a contract, are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract: its foundation, on the faith of which it is entered into. If wrongly presented in any respect material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented." p. 390.

These remarks are sufficient to show that the position of the defendant in attempting to defeat the action on the ground that fraudulent representations were made in the application, is essentially different from that held by a party who seeks to rescind a contract on the ground of fraud. The two cases are not to be confounded, as they seem to have been by the court below.

For these errors the judgment of the circuit court must be reversed, and a *venire de novo* awarded.

*By the Court.* — It is so ordered.