DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## NOVEMBER TERM, 1877.

---

### KANE v. THE HIBERNIA INSURANCE COMPANY.

1. In an action on a policy of insurance against loss by fire, where the defence is that the property insured was wilfully burned by the assured, the rule in civil, and not in criminal cases, as to the *quantum* of proof, applies, and a charge to the jury that the defendant is bound to establish the defence beyond a reasonable doubt, and by the same measure of proof that would be necessary to convict the plaintiff if he was on trial upon an indictment charging that offence, is erroneous.

2 *Thurtell* v. *Beaumont*, 8 *J. B. Moore* 612; 1 *Bing.* 339, disapproved.

---

On error to the Supreme Court.

Kane brought an action of *assumpsit* against the insurance company on two policies of insurance (not under seal,) against loss by fire. The defence was that the building insured was burned by design, with the knowledge and procurement of the plaintiff.

The defendant's counsel asked the court to charge the jury that, as to the defence of burning by design, while the burden of proof was on the defendant to establish this defence, it was only necessary to do so by the fair weight or preponderance of the evidence. The court refused so to charge, and charged the jury that, in order to make out such defence, the defendant was bound to establish the same beyond a reasonable doubt, and by the same measure of testimony that would be necessary to convict the plaintiff if tried under an indictment charging that offence.

The question of the correctness of this instruction was reserved and heard before the Supreme Court. *Kane* v. *Hibernia Insurance Company,* 9 *Vroom* 441. The decision of the Supreme Court being adverse to the defendants, the case was removed by them to this court, by writ of error, on exceptions sealed at the trial.

For the plaintiff in error, *Joseph Coult* and *H. C. Pitney.*

*Contra, F. Voorhees* and *J. C. Ten Eyck.*

The opinion of the court was delivered by

DEPUE, J. The writ of error brings up for review only the propriety of the judge's charge.

It is conceded that there is a difference between civil and criminal cases in respect to the degree or quantity of evidence necessary to determine the verdict of a jury. In civil cases, it is the duty of the jury to find for the party in whose favor the evidence preponderates; but in criminal cases, the accused should not be convicted upon any preponderance of evidence, unless it generates full belief of the fact, to the exclusion of all reasonable doubt. 3 *Greenl. Ev.,* § 29; *Best on Ev.,* § 95. But it is contended that there is an exception to this general rule, where the issue in a civil case is one in which crime is imputed, and the guilt or innocence of a party is directly or incidentally involved. In such cases, it is said that the presumption of innocence is to have as great effect as

in criminal trials, and that to justify a verdict against the party to whom crime is imputed, the evidence adduced must be such as would be sufficient to convict upon an indictment for the crime imputed. 2 *Greenl. Ev.*, §§ 408, 426 ; 1 *Taylor on Ev.*, 97, *a.*

This exception is most frequently invoked in actions of libel and slander, where a justification imputing crime is pleaded, and actions on fire policies, where the defence is that the property was wilfully burned by the insured.

Actions of libel and slander on an issue upon such a justification, as civil actions, may be regarded as exceptional in character. A defendant in such an action, if he was warranted in giving publicity to the defamatory words by the occasion of publishing or uttering them, may discharge himself if he shows by a preponderance of evidence that the occasion was such as to make the communication a privileged communication. But if he published or uttered the defamatory words under other circumstances, in doing so he was a mere volunteer, without any personal or private interest in the subject matter. In putting his justification on the ground of the plaintiff's guilt of the accusation, he undertakes to prove the plaintiff's guilt, which comprises not only the doing of the act, but also the intent, which the law denounces as criminal. As a matter of pleading, he is bound to plead with precision, a justification as broad as the accusation attempted to be justified, and containing all the ingredients necessary to the commission of the crime: and as a question of evidence, he is bound to make his proof coextensive with the averments in his plea. Under such circumstances, it is neither impolitic nor unreasonable to require the truth of the accusation to be established by the same degree of proof as is required on the trial of an indictment. The mistake is in overlooking the exceptional character of this class of actions, and deducing from them a rule of evidence, to be applied in other civil cases, for the enforcement of contracts or the recovery of damages for injuries to the person or property, where the presence of crime, if it appear in the facts relied on to make a case or a defence, is wholly fortuitous.

The distinction between cases where the commission of crime is directly in issue, and where it is only incidentally involved, is recognized by Mr. Stephen in his excellent summary of the law of evidence. In cases where crime is directly in issue, the author states the rule to be, that the proof must be beyond a reasonable doubt, whether the action be civil or criminal; but where the guilt arises only incidentally in a case, he regards it as determining merely the burden of proof. *Stephen on Ev.*, *Art.* 94, *p.* 115.

In an action on a contract of insurance, a defence that the loss was caused by the wilful act of the assured, does not necessarily involve a criminal accusation. It rests upon the legal maxim that no man shall be permitted to derive advantage from his own wrong. "It is," says Lord Campbell, C. J., "a maxim of our insurance law, and of the insurance laws of all commercial nations, that the assured cannot seek indemnity for a loss produced by his own wrongful act." *Thompson* v. *Hopper*, 6 *E. & B.* 171, 196. In that case, which was an action on a marine policy, a plea that the plaintiffs knowingly, wilfully and improperly sent the ship to sea at a time when it was dangerous for her to go to sea in the state and condition in which she then was, and wrongfully and improperly caused and permitted the ship to be and remain on the high seas, near to the shore, in the state and condition aforesaid, without a master and without a proper crew to manage and navigate her, &c., and that the ship, by reason of the premises, was wrecked, was held to disclose a good defence. In delivering the judgment of the court, Lord Campbell said, "according to the statement in this plea, the plaintiffs' loss was caused by their wrongful act, and, if so, I think there was no necessity to characterize it as being either felonious or fraudulent." Knowledge and wilfulness and a loss resulting directly and immediately from such wrongful act, are the essential elements of such a defence. *Dudgeon* v. *Pembroke*, *L. R.*, 9 *Q. B.* 581; 1 *Q. B., Div.* 96; 2 *App. Cas.* 284; *Thompson* v. *Hopper*, *E., B. & E.* 1038.

Under a fire policy, the assured may recover for a loss

occasioned by mere carelessness, without fraud or wilful misconduct. But to make defence to the action, the defendants need not prove that the plaintiff had committed an indictable offence. It is sufficient if it be shown that the plaintiff purposely and wantonly set fire to the property insured. *Schmidt* v. *N. Y. U. M. F. Ins. Co.*, 1 *Gray* 529. At common law, and independently of the act of 1859, (*Rev., p.* 242,) a man might burn his own house without incurring liability to indictment, unless it was so situated with respect to the houses of others as to endanger their safety. 2 *East Pl.* 1027, § 7; 1034, § 11; *State* v. *Fish*, 3 *Dutcher* 323. After the act of 1859 became a law, a man might still, without criminal responsibility, burn his own house, if it was done without intent to prejudice the insurance thereon. Indeed, cases may arise where the assured may procure the destruction by fire of his property, with intent to defraud the insurer, and not be liable to indictment under the statute. Criminal laws are essentially local in their operation, and the incitement in a foreign jurisdiction to the commission of a crime in this state, is not indictable under our laws. Therefore, one who, in another state, procures another to enter this state and commit a crime, is not guilty of any offence punishable by the laws of this state. *State* v. *Wyckoff*, 2 *Vroom* 65. And yet it cannot be doubted that, before the act of 1859, an insurance company might successfully defend on the ground that the assured wilfully caused the destruction of the property insured, and that such defence may be made where the assured is so circumstanced as not to be indictable under the statute. A contract for indemnity in such case would be absurd, and, so far as it related to a voluntary and intended loss, would be void in law. 1 *Phillips' Ins.*, § 1046.

The doctrine that, in an action on a policy, the defence that the plaintiff had wilfully set fire to the premises must be as fully and satisfactorily proved as if the plaintiff were on trial on indictment, originated in the case of *Thurtell* v. *Beaumont*, 8 *J. B. Moore* 612; 1 *Bing.* 339. This ruling is adopted by Mr. Greenleaf and Mr. Taylor, and is strongly approved

by the latter writer.    2 *Greenl. Ev.*, § 418 ; 1 *Taylor's Ev.* (*5th ed.*) 97, *a.*    It is disapproved by Mr. Wharton, and is vigorously assailed by Mr. May, the author of May on Insurance, in an article in the American Law Review.    2 *Whart. Ev.*, § 1246 ; 10 *Am. Law Rev.* 642.

The decision on this point, in Thurtell *v.* Beaumont, was made on an application for a rule, and without much consideration.    It has never received approval in the English courts, although, as a rule of evidence, occasions have repeatedly arisen for its adoption and application.    The cases decided upon the English Carriers' Act, (11 *Geo. IV.*, and 1 *Wil. IV.*, *ch.*, 68,) and the Bribery Act (17 and 18 *Vic.*, *ch.* 102,) are cases in which a rule requiring the same measure of proof in civil as in criminal cases, where the facts in support of a civil liability would tend to establish a criminal charge, would be expected to be applied, if any such rule existed.

The Carriers' Act relieves a carrier from responsibility for the loss of or injury to goods in certain cases, unless the loss or injury arose from the felonious acts of his servants.    In several cases the question has been before the English courts, whether the evidence was sufficient to bring the case within this exception.    *G. W. Railway Co.* v. *Rimell*, 18 *C. B.* 575 ; *Metcalfe* v. *The L. & B. & S. C. R. Co.*, 4 *C. B.* (*N. S.*) 307 ; *Vaughton* v. *The L. & N. W. R. Co.*, *Law Rep.*, 9 *Exch.* 93 ; *McQueen* v. *G. W. R. Co.*, *Law Rep.*, 10 *Q. B.* 569.    In none of these cases was Thurtell *v.* Beaumont cited, or any reference made to the necessity of establishing the issue by the weight of evidence required in criminal cases.    On the contrary, it is apparent, from the observations of the judges, that the issue was treated of as one to be determined by the simple weight of evidence, as in other civil cases.

By the Bribery Act, (17 and 18 *Vic.*, *ch.* 102,) it was provided that any person who, directly or indirectly, by himself, or any other person, in his behalf, should give or promise any money, &c., to any voter, to induce him to vote, &c., should be guilty of a misdemeanor, and should also be liable to for-

feit the sum of £100 to any person who should sue for the same.

In *Cooper* v. *Slade*, reported in 6 *E. & B.* 447, and in 6 *H. of L. Cas.* 746, the action was for a penalty under this act. The judge (Baron Parke), at the trial, charged the jury that if they were satisfied, upon the evidence, that the defendant did, by himself or any other person, on his behalf, promise money to the voter to induce him to vote, they ought to find for the plaintiff. This direction was held, by the House of Lords, to be a right direction. On the review, the case was discussed, largely, on the sufficiency of the evidence to sustain a verdict against the defendant. Thurtell *v.* Beaumont was not cited, nor was the case considered by the courts as if the sufficiency of the evidence to sustain a criminal accusation was at all involved. The only judge who adverted to the rule of evidence as to the degree of proof necessary to the finding of a verdict, was Justice Willes, in the House of Lords. He asked that he might be excused for referring to an authority "in support of the elementary proposition that in civil cases the preponderance of probability may constitute sufficient ground for a verdict, and then cited, at length, a passage from *Newis* v. *Lark*, *Plowd.* 412, and referred to *Best on Ev.* (2d ed.) 114. The passage cited from Plowden is one in which certainty in pleading is contrasted with sufficiency of proof, and it is said that "where the matter has gone so far that the parties are at issue, * * so that the jury is to give a verdict one way or the other, then, if the matter is doubtful, they may find their verdict upon that which appears the most probable." The reference to Best is the paragraph (Section 95) in which the author adverts to the "strong and marked difference as to the effect of evidence in civil and criminal proceedings," and states the rule to be that, in civil cases, a mere preponderance of probability —due regard being had to the burden of proof—is a sufficient basis of decision. These observations of the learned judge are entitled to peculiar force, from the fact that they related to an action upon a statute which made the same acts from which

a civil liability resulted, also the ground of a conviction upon an indictment.

It may safely be said that Thurtell v. Beaumont, in principle, stands alone and unsupported in the English courts, except in actions of libel and slander, which are to be regarded as exceptional, and resting upon considerations peculiar to the nature of the actions and of the injuries for which they are brought.

In the courts of this country, the principle adjudged in Thurtell v. Beaumont has received but slender support, except in libel and slander cases. The weight of authority is decidedly against the soundness of the rule there propounded, in its application to actions on policies of insurance, as well as other civil actions, where the issue is such that, for its support, a case must be made such as would afford ground for an indictment. In *Gordon* v. *Parmelee*, 15 *Gray* 413, it was held that, in an action on a promissory note, the defence that the note was obtained by false and fraudulent representations, might be sustained by a preponderance of evidence, as in other civil cases, and that it was not incumbent on the defendant to establish it by proof beyond a reasonable doubt, although the defence was based on a charge of fraudulent representations such as might be the subject of a criminal prosecution. In *Bradish* v. *Bliss*, 35 *Vt.* 326, the action was in trespass for burning the plaintiff's building, and the evidence showed that the defendant, if guilty of trespass, had set fire to the building designedly, and was guilty of the crime of arson. The court, nevertheless, held that, it being a civil cause, the issue must be determined by the fair preponderance of evidence. A similar decision was made in *Munson* v. *Atwood*, 30 *Conn.* 102, which was an action on a statute which gave the right to recover the treble value of property feloniously taken. In trover, where the evidence was such as to involve a charge of larceny, a direction to the jury that the evidence, to justify a verdict against the defendant, must satisfy them of the truth of the charge beyond a reasonable doubt, was held to be erroneous. *Bissel* v. *Wert*, 35 *Ind.* 54.

The decisions in actions on policies of insurance against loss by fire, are mainly to the same effect. In *Schmidt* v. *N. Y. U. M. Fire Ins. Co.*, 1 *Gray* 529, the defence was, that the plaintiff had purposely set fire to the property insured, and burned it; and it was held that the judge properly refused to instruct the jury that they must be satisfied, beyond a reasonable doubt, of the truth of this defence. The criticism on this case, in the court below, that the instruction actually given was, in substance, equivalent to an instruction that the defence must be established beyond a reasonable doubt, and that the case, if it does not inferentially recognize the rule in Thurtell v. Beaumont, is of no value as an authority against it, though warranted by some expressions of the judge, in his opinion, is shown to be untrue, in fact, by the opinion of the same judge, in *Gordon* v. *Parmelee*, 15 *Gray* 413. In the latter case, he adverts to the case in 1 *Gray*, and declares it was not the purpose of the court to sanction any exception to the rule, or to say that, in any civil action, the jury were not to decide by the preponderance of the proof or the weight of the evidence; and he closes his opinion by saying that, "in the opinion of the court, it is better that the rule be uniform, leaving the instruction that the jury must be satisfied of the guilt of the party beyond a reasonable doubt, to apply solely to criminal cases." In the following cases, also, in actions on fire policies, where the defence was a wilful destruction, by the assured, of the property insured, the rule of evidence adopted in Thurtell *v.* Beaumont was repudiated, and the correct rule declared to be that, in civil cases, the verdict should be determined by the preponderance of the evidence, without regard to the fact that in the defence was involved a charge which might be made the ground of a criminal prosecution: *Scott* v. *Home Ins. Co.*, 1 *Dillon C. C.* 105; *Huchberger* v. *Merchants' Fire Ins. Co.*, 4 *Bissel C. C.* 265; *Washington Ins. Co.* v. *Wilson*, 7 *Wis.* 169; *Blaeser* v. *M. M. M. Ins. Co.*, 37 *Wis.* 31; *Rothschild* v. *Amer. Cent. Ins. Co.*, 62 *Mo.* 356; *Ætna Ins. Co.* v.

*Johnson*, 11 *Bush* 587; *Hoffman* v. *W. M. & F. Ins. Co.,* 1 *La. An.* 216; *Wightman* v. *Same*, 8 *Rob.* 442.

I fully concur in these decisions, and the reasoning on which they are founded.

In actions where usury was pleaded, it has been said that the defence must be established beyond a reasonable doubt. *Conover* v. *Van Mater*, 3 *C. E. Green* 481; *Taylor* v. *Morris*, 7 *Id.* 606. This language was used, perhaps inconsiderately, to express the quantity of evidence that, under the circumstances, should be required to defeat the plaintiff's security, without intending to assert that, as a rule of law, the same measure of proof should be required in civil as in criminal cases. So also in suits on fire policies, on a defence like that in the present case, judges, in their instructions to juries, have commented on the gravity of the charge contained in such a defence, and have put the presumption of innocence in the scales as an element to weigh in favor of the plaintiff and decide the issue, if the evidence was not entirely satisfactory. The charge of Judge Davis, in *Huchberger* v. *Merchants'* Fire Insurance Company, and of Judge Dillon, in *Scott* v. Home Insurance Company, and of Chief Justice Whelpley, in *Powers* v. *Market Fire Insurance Company*, in the Morris Circuit, are examples of this mode of dealing with the subject in the practical administration of the law. But in each of these cases the judge was careful to instruct the jury that the rule of law in criminal cases, with respect to the *quantum* of proof, was not to be applied.

A judge may make such comments on the evidence as he deems proper, and may advise and instruct the jury with respect to the degree of proof they should require to decide the issue under the circumstances of the particular case. But a charge that, as a question of law, proof beyond a reasonable doubt is required, is quite a different thing. While it is impracticable to frame a satisfactory definition of the expression "reasonable doubt," yet the effect of a charge, in this language, is a matter of almost every day's observation. Every one familiar with the administration of justice can recall in-

stances in which defendants, under such an instruction, have been pronounced not guilty, when the evidence of guilt was quite convincing.

The importance of preserving the distinction between civil and criminal cases increases with the growth of the criminal law. Almost every tortious act is by statute made indictable, if done wilfully or maliciously, and the courts should be reluctant to adopt, in civil cases, the rules peculiar to criminal law, lest wrong-doers be enabled to avoid civil liability, as well as escape criminal responsibility, under cover of the rules of criminal prosecution, the object of which is punishment only.

The judgment should be reversed.

DIXON, J. Several of my brethren unite with me in desiring to exclude the inference that we assent to the intimation contained in the opinion just read, as to the exceptional character of actions of libel and slander. We prefer that that matter should remain open, to be decided when its decision is necessary.

KNAPP, REED and DODD, JJ., concurred in the views of Justice DIXON.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DALRIMPLE, DEPUE, DIXON, KNAPP, REED, CLEMENT, DODD, LATHROP, LILLY, WALES—11.