JOHN B. EMERY AND CYRUS GAULT *vs.* CORNELIUS H. AND CALEB D. OWINGS, ADMINISTRATORS OF BEALE OWINGS. *December,* 1847.

The owner of the fee on which a stone quarry was situate, having mortgaged and leased the quarry, devised it to his son, and directed "that the rents arising from the quarry be applied to discharge the incumbrances on the same." *Held,* that the rents due at the testator's death passed to the son of the deceased, for the purpose of paying the incumbrances.

That the clause of the will did not separate the rents from the reversion.

If the application of the rents had been directed to the payment of the testator's debts, irrespective of the lands out of which they issued, the implication of a devise of the rents to the testator's executor could not have been repelled.

To executors only are confided the ascertainment and payment of testator's debts.

The construction of written contracts is to be declared by the court, and not submitted to the finding of the jury.

A lease granting the license, right and privilege of quarrying, getting out, working and carrying away granite stone, does not confer the right of carrying away rubble stone.

Granite stone is a known article of commerce, sold by the cubic foot, and is called dimension stone; while rubble stone is sold in the mass, or by the perch.

Where, as between lessor and lessee, the right existed to quarry and take away *granite* stone, and a payment was made under an agreement, that the same should be applied to the quarry rents thereafter to become due, and the lessor retained the money, he cannot set up, in opposition to the application of such payment to the rent, another claim, as for rubble stone, though connected with the quarry, due from the lessee to him.

The court will not issue a procedendo on reversal of a judgment, where they perceive from written evidence, as a receipt, that the plaintiffs cannot ultimately recover.

APPEAL from *Baltimore* County Court.

This was an action of *debt,* brought by the appellees against the appellants, to recover the sum of $750 debt. The plaintiffs counted upon a lease made by *Nicholas Owings,* deceased, to the defendants, of a granite quarry in *Baltimore* County, as owner in fee, dated 11th June, 1840, for the term of six years from the 10th November following. The lessees were to quarry forty thousand cubic feet in each year, *and pay one and*

*one-fourth cents for each cubic foot* rent, quarterly, and alleged that they entered upon the demised premises; that *N. O.* on the 7th July, 1841, *devised* the reversion of the leased premises to *Beale Owings*, for his natural life; that on the 30th December, 1841, *N. O.* died seized of the reversion. The declaration then proceeded to show the amount of rent up to the commencement of this action, and the periods at which the same accrued, &c.

The defendants pleaded *nil debet* with leave to give in evidence any special matter which might be pleaded in bar of the action upon notice, &c.

1st Exception.—Upon the trial the plaintiffs proved the lease declared upon, for the granite quarries known as the *Fox Rock or Fox Quarry*, with the right of quarrying the same in such quantities from time to time as the lessees' co-partners may have occasion in their business or may choose, not less than 40 M. cubic feet in each year during the demised term, yielding and paying to the lessor, &c. It was stipulated in the lease that it should not be construed to impair or affect the right or interest of, &c. under or by virtue of a mortgage theretofore executed by the said lessor, *Nicholas Owings.*

It was admitted that *N. O.* was dead, having first duly made and published his last will and testament, containing, amongst others, the following clause:

"It is my will and desire, that the rents arising from the quarry, known by the name of the *Fox Rock Quarry*, be applied to discharge the incumbrances on the same."

It was also in proof that the *Fox Rock Quarry* was a part of the real property which *Nicholas Owings* devised to his son, *Beale Owings*, the intestate of the plaintiffs in this action; that *Cornelius H. Owings* and *Francis R. Griffith* were appointed executors by the will of *Nicholas Owings*, and *Beale Owings* was in possession of the lands and premises devised to him; and that the defendants were in possession of the quarries and demised premises in 1841, 1842 and 1843. *Beale Owings* died on the 26th July, 1844, intestate, and that letters were granted to the appellees on his estate.

The defendants, after notice to the plaintiffs, and to show that the plaintiffs had no right to any of the rent claimed, which fell due after the 10th August, 1842, proved an assignment of the quarry from *B. O.* to *Edward Green,* dated 7th Oct. 1842.

The defendants further gave in evidence by *Matthew G. Emery,* that he was employed in cutting stone at the *Fox Rock Quarry,* in the year 1840; that in the summer of the year after *Noah Worthington* had torn up the rail-road running across his land, (being a part of the rail-road leading from said *quarry* to the *Baltimore and Ohio Road,*) and before said rail-road, thus torn up, had been laid down again—being on a visit at the house of *Nicholas Owings*—had a conversation with him respecting the said rail-road that had been torn up, and as to the prospect of its being laid down again; that in this conversation, *N. O.* said that he was very sorry it had been torn up, and that he did not know what he should do to get it put down again, as he had no money to pay to *Noah Worthington* the sum he demanded, that is, $866, the amount he had expended in law suits about said road, and that he, *Nicholas,* did not know what he should do, unless *Emery & Gault* would advance to him that sum; that on his next visit to *N. O.* he, *N. O.* said that *Emery & Gault* had advanced to him the said sum of $866, *to be taken out in rent of said quarry;* and that he, *N. O.* had sent the money over to *Mr. Worthington,* and that in consequence of said advance, he, the said *Nicholas,* would not receive any thing for two years, as it would take nearly that time to pay off said advance. The said witness, then upon examination by the *plaintiffs,* proved the following receipt:

*"Baltimore County, June 5th,* 1840.

"Received of *Emery & Gault* $866, to be returned them in *granite stone,* to the amount of sixty-nine thousand three hundred feet, without interest, between the 10th November, 1840, and the 10th November, 1846, they being at the expense of quarrying and transporting the same from my quarry, known as the *Fox Rock Quarry.* Nicholas Owings."

The defendants further gave in evidence by *Matthew G. Emery*, that he was present when *Gault*, one of the defendants, paid to said *N. O.* the sum of $101 85, and that the following receipt was given therefor.

"Rec'd, *Balt.* County, Feb. 19th, 1841, of *Emery & Gault*, $101 85, on account of quarry rent.

" NICHOLAS OWINGS."

The defendants also proved the following receipt:

Rec'd, *Balto.* Octo. 13th, 1841, of *M. G. Emery* for *E. N. Gault*, $20, on account of *Nicholas Owings.*

"C. H. OWINGS."

That he, the witness, did not pay the sum of $20 on account of rent due, *but on account of rent to become due.* It was to go on account of the lease.

The plaintiffs gave proof to rebut the parol evidence offered by the defendants, as to the application of the money advanced by them to *Nicholas Owings*, as an offset to the rent claimed in this action, and that it was paid on a different account.

The plaintiffs further gave in evidence by *Peter Gorman*, a competent witness, duly sworn, that he knows the *Fox Rock Quarry*, and knows what is called *Rubble stone.* There is a large amount of that kind of stone, including offal and dirt at the *Fox Rock Quarry*, that has been accumulating since the quarry was opened; that dimension stone are used in building warehouses, and for columns, &c. The dimension stone are the main object in opening a quarry; they are worth from 40 to 50 cents per cubic foot in *Baltimore;* that *Rubble stone*, if a man wants it, is worth from 50 to 75 cents, perhaps $1 per perch; that the witness, within five years past, received from the *Fox Rock Quarry* a few car loads of Rubble stone, which he used in building a house; that he purchased them of *Emery & Gault*, who delivered them on cars near to the house of the witness; that he paid $1 a car load, each containing about a perch and a half, *equal to about thirty-seven cubic feet.* There has been a good deal of Rubble stone used

in constructing the *Baltimore and Ohio Rail-road*. Dont know of any other sale or use by *Emery & Gault* of *Rubble stone* from the *Fox Rock Quarry*, except what he, the witness, took; that there is at the *Fox Rock Quarry* an immense heap of offal stone and rubbish, three-fourths of which is sand, and good for nothing; that forty thousand feet, or $500 worth, at the rate of one cent and a quarter per foot, might be got out in a year at the *Fox Rock Quarry*. It has always been considered that the expense of getting stone from that quarry was less than at other quarries.

The plaintiffs, further to support the issue on their part, and to rebut the evidence given on the part of the defendants, gave in evidence by *William Clary*, that he had been a stone-cutter for three years; that he considers the *Fox Rock Quarry* more advantageous for furnishing stone to the *Baltimore* market, by several cents in the foot, than other quarries. There is a descent from the quarry to the *Baltimore and Ohio Rail-road*, except for the distance of two hundred yards; that he, the witness, never knew any custom, at any of the quarries, to pay for the Rubble stone, neither at *Worthington*, which was worked in 1833, but not since, nor at the *Watersville Fox Rock*, or *Meadow Field Quarry*.

The plaintiffs and defendants offered testimony in relation to the value of dimension and rubble stone; the comparative facility of procuring them at the leased quarry; the facilities for transporting them to market,—which proofs are not deemed material to be published.

The defendants then prayed the direction of the court to the jury :—

1. " That under the will of *Nicholas Owings*, the rents of the *Fox Rock Quarry* did not pass to *Beale Owings*, the plaintiff intestate, and that the plaintiffs are therefore not entitled to recover in this action:" which direction the court (PURVIANCE and LE GRAND, A. J.,) refused to give.

2. That if the jury find from the evidence that the receipt offered in evidence by the plaintiffs, of the 5th June, 1840, was given by *N. O.* under an agreement that the same should be

applied to the payment of rents thereafter to become due from the defendants to said *Nicholas Owings*, from the *Fox Rock Quarry*, under the lease of the 11th June, 1840, and that the sum of *eight hundred and sixty-six dollars* has not been returned to said defendants by the said *Nicholas Owings*, to those claiming under him, or in any way satisfied, that then they must allow said receipt, or so much thereof as may be now due as an offset to the plaintiffs' demand, which instruction the court gave as prayed.

The plaintiffs then prayed the following additional instruction to the jury, to wit :—

" But if the jury find from the evidence, that the defendants are chargeable with the *Rubble* or offal stone, taken by them from said *Fox Rock Quarry*, and that they have taken out the amount of said receipt for $866, in said Rubble or offal stone, then the said $866 is not to be received in bar of this action. Notwithstanding, the jury may find that said $866 was agreed to be applied to extinguish the rents of said quarry :" which the court granted.

The defendants excepted to the instruction of the court, as well in refusing to grant the defendants' *first* prayer aforesaid, as in granting the additional instruction prayed by the plaintiffs.

The verdict and judgment of the court below being in favor of plaintiffs, the defendants appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By HINKLEY and NELSON for the appellants, and

By R. J. BRENT for the appellees.

DORSEY, J., delivered the opinion of this court.

The defendants, by their first prayer, prayed the opinion of the court to the jury: that, under the will of *Nicholas Owings*, the rents of the *Fox Rock Quarry* did not pass to *Beale*

*Owings,* the plaintiff intestate, and that the plaintiffs are there-fore not entitled to recover in this action: which opinion and direction the court refused to give. Whether the County Court were right or not in refusing this prayer, depends upon the true construction of that part of the testator's will, which relates to those rents. After devising to his son, *Beale Owings,* the *Fox Rock Quarry,* out of which the rents issue, the will proceeds as follows:

"And it is my will and desire that the rents arising from the quarry known by the name of the *Fox Rock Quarry,* be ap-plied to discharge the incumbrances on the same."

This clause of the will, it is insisted, separates the rents from the reversion devised to *Beale Owings ;* and by neces-sary implication, gives them to the executors of the testator. If the application of the rents had been directed to the pay-ment of the debts of the testator, irrespective of the lands out of which the rents issue, it might have been somewhat difficult to repel the implication of a devise of the rents to the execu-tors of the testator; because to the executors only is confided the ascertainment and payment of the debts of the testator. But by this clause in the will, the rents are not directed to the payment of debts generally, but to the discharge of the incum-brances on the *Fox Rock Quarry.* To whom then could the rents more appropriately be given to effectuate the design of the testator, than to him to whom the reversion was devised? He was as competent to make the application of them, directed by the will, as the executors of the testator; and much more deeply interested in their being faithfully applied. And fur-ther, it is not to be presumed to have been the intention of the testator to diminish the means of collecting the rents, and the certainty of their application to the object by him enjoined, which certainly would be the result of the implication con-tended for. Had the testator, by his will, have separated the rents from the reversion, and given them to his executors, the only means of their recovery would have been by an action of debt; but if suffered to pass to the devisee, according to the legal import of the devise, the rents could be recovered

not only by an action of debt, but by distress, which is justly regarded as much the more speedy, certain and efficient remedy for the recovery of rents. Of the rents when collected, the devisee becomes, as it were, a *quasi* trustee for their faithful application according to the will. So far from its being necessary to imply a devise of the rents to his executors, to effectuate the intent of the testator, there is every reason to presume his intent to have been the reverse of that, which, by such an implication, it is assumed to have been. There is, therefore, no error in the County Court's refusing the opinion and direction to the jury, sought by the appellants' first prayer.

The appellants' second prayer was upon the whole evidence. The defendants, by their counsel, prayed the court to instruct the jury, that if they find from the evidence that the receipt offered in evidence by the plaintiffs, of the 5th June, 1840, for the sum of $866, was given by *Nicholas Owings*, under an agreement that the same should be applied to the payment of rents thereafter to become due from the defendants to said *Nicholas Owings*, from the *Fox Rock Quarry*, under the lease of the 11th June, 1840, and the said sum of $866 has not been returned to said defendant by the said *Nicholas Owings*, or those claiming under him, or in any way satisfied, that then they must allow said receipt, or so much thereof as may be now due as an offset to the plaintiffs' demand, which instruction the court refused to give to the jury, but gave to them the following instruction, to wit: "But if the jury find from the evidence, that the defendants are chargeable with the Rubble or offal stone, taken by them from said *Fox Rock Quarry*, and that they have taken out the amount of said receipt for $866 in said Rubble or offal stone, then the said $866 is not to be received in bar of this action, notwithstanding the jury may find that said $866 was agreed to be applied to extinguish the rents of said quarry."

The testimony in this case being all received without objection, unless it be on the ground assumed in the court's instruction to the jury, it does not appear *that any other* reason existed for the court's refusal to grant the defendants' second prayer.

It becomes our duty, then, to inquire into the legality of the court's instruction, as regards the liability of the appellants to pay for Rubble stone. This liability the court referred to the decision of the jury; and in this we think the County Court erred.

It is a wise and well-established rule of law, that the true construction of written contracts is to be declared by the court, and not submitted to the finding of the jury. In the lease in question before the court, sufficient appears upon its face to show what was its true intent and meaning; what was the intention of the parties in entering into the contract. The lease describes the appellants, (the party of the second part,) as residents of the City of *Baltimore*, and partners in the trade and business of quarrying, cutting and selling granite stone, and carrying on the same under their co-partnership name and firm of *Emery & Gault*, and transfers to the appellants "the license, right and privilege of quarrying, getting out, working and carrying away granite stone from said quarry or quarries, to the use and benefit of said *Emery & Gault*, or the survivor of them, and the executors, administrators and assigns of such survivor, for the term of six years, they paying for the stone $1\frac{1}{4}$ cent per cubic foot." The very fact of the stone being sold by the cubic foot, in the absence of all other confirmatory parts of the lease, demonstrates that the stone sold and sought to be obtained under the lease, were dimension, not Rubble stone,—the former being always bought and sold by the cubic foot,—whilst it is believed, and may be safely asserted, that in *Maryland* no instance exists, or ever did exist, of Rubble stone being sold by the cubic foot. Such a rule of admeasurement is wholly inapplicable to Rubble stone, and is applicable to sales of dimension stone only, which are never sold by that species of measurement, if to be measured at all;—whilst Rubble stone is universally sold in the mass, or by the perch. This interpretation of the contract between the parties is strongly corroborated by the fact, that the appellants are stone-cutters in the City of *Baltimore*, and consequently use dimension stone only. Had they been stone-masons, there would have been

some plausibility in the argument that their contract embraced Rubble, as well as dimension stone.

The County Court did not err in rejecting the first prayer of the defendants below; but there is error in its refusal of the second prayer, and in the instruction which it gave in relation to the Rubble stone, and therefore its judgment should be reversed. *But no proccdendo should issue;* because there appears to be but three-quarters of a year's rent due on the lease, for which any action could have been sustained by the plaintiffs below, and the set-off, to which the said defendants have shewn themselves entitled, far exceeds that amount.

JUDGMENT REVERSED.