THE HOME MUTUAL INSURANCE COMPANY OF CALIFORNIA, Plaintiff in error, vs. ROE, Defendant in error.

*February 1 — February 28, 1888.*

*Insurance against fire: Property covered by policy: "Addition:" Court and jury.*

1. A policy covered a "planing-mill building *and addition*" and "machinery, including shafting, gearing, belting, saws, tools, force-pump, and hose therein." The engine-room, from which the entire motive power was furnished, was situated twenty-two feet from the mill building, and was connected therewith by a shaft for the transmission of the power and by a spout through which shavings were forced into the engine-room. A roadway passed between the buildings under the shaft and spout. There was no other addition to the mill building. *Held*, that the policy covered the engine-room and the engine and other machinery therein.

2. Where there is no ambiguity in the language of a contract when applied to the undisputed facts, it is the province of the court to interpret it.

ERROR to the Circuit Court for *Winnebago* County.

Action upon a policy of insurance against fire. The following statement of the case was prepared by Mr. Justice CASSODAY:

January 26, 1885, J. H. Weed, in behalf of *G. W. Roe*,

through one L. D. Harmon, an insurance agent at Oshkosh, and in consideration of $60 paid to the *Home Mutual Insurance Company of California*, obtained from it, by the hands of its agents at Oshkosh, Palmer & McLaren, a written policy of insurance issued by said company, wherein and whereby it insured said " *G. W. Roe* against loss or damage by fire, to the amount of $1,000 in United States gold coin, viz.: $250 on his one-story frame planing-mill building *and addition,* situate at Antigo, Langlade county, Wis.; $750 on machinery, including shafting, gearing, belting, saws, tools, force-pump, and hose *therein;* " and wherein said company agreed " to make good to the assured, or his legal representatives, all such immediate loss or damage, not exceeding in amount the interest of the assured nor the sum insured as aforesaid, as " should " happen by fire to the property above specified, from the 26th day of January, 1885, at noon, to the 26th day of January, 1886, at noon."

The complaint, among other things, alleged that a fire occurred June 29, 1885, by which the said planing-mill was damaged and destroyed by fire to the amount of $175, and said machinery was destroyed and damaged by fire to the amount of $750; also, the making of proofs of such losses, respectively, and delivering the same to said company. It also negatived the exceptions in the policy; and alleged the failure to pay; and demanded judgment for $925, with interest from November 1, 1885, with costs.

The answer of the company specifically admitted the incorporation of the company; the making and issuing of the policy; that the fire was not caused by any of the negative things alleged; that proofs of loss had been made as stated; that no part thereof had been paid; but otherwise denied each and every allegation of the complaint; and alleged that the property so claimed to have been destroyed by fire was not insured by the defendant, nor contained in, mentioned, described, or referred to in said

policy; and that no part of the property insured in and by the policy had at any time been injured, damaged, or destroyed by fire.

The cause was tried by a court and jury; and at the close of the plaintiff's evidence, and on May 11, 1887, the defendant requested the court to direct a verdict in its favor, but the court refused and directed the jury to find for the plaintiff, *G. W. Roe*, and assess his damages at $1,022.12, which they did accordingly. To review the judgment entered upon such verdict, the company has sued out a writ of error.

For the plaintiff in error there was a brief by *Charles W. Felker*, and oral argument by *Mr. Felker* and *Thos. Bates.* They argued that the word "addition" as used in this policy may properly be defined to be an adding or joining to the original structure, and implies an increase or enlargement of the building. Rapalje's Law. Dict. tit. ADDITION; Worcester's Dict., Webster's Dict., and Encyclopedic Dict. tit. ADD and ADDITION. Where the policy is specific as to the subject matter of the risk it cannot be extended by implication. *Arkell v. Commerce Ins. Co.* 69 N. Y. 191–3; *Liebenstein v. Baltic Ins. Co.* 45 Ill. 303; *English v. Franklin F. Ins. Co.* 55 Mich. 273; *Bryce v. Lorillard F. Ins. Co.* 55 N. Y. 240; *Sampson v. Security Ins. Co.* 133 Mass. 49; *Annapolis & E. R. Co. v. Baltimore F. Ins. Co.* 32 Md. 37; Wood on Ins. sec. 56; *Hews v. Atlas Ins. Co.* 126 Mass. 389. If the policy was not written in accordance with the intentions of the parties the remedy is in equity. *Hammel v. Queen Ins. Co.* 50 Wis. 240, 243.

For the defendant in error there was a brief by *Weisbrod, Harshaw & Nevitt*, and oral argument by *Mr. A. W. Weisbrod.* They contended, *inter alia*, that the construction and effect of the contract is a matter of law to be determined by the court. *Farnsworth v. Brunquist*, 36 Wis. 202; *Buchanan v. Exchange F. Ins. Co.* 61 N. Y. 26, 33; Wood on Ins.

sec. 57. Policies are to be liberally construed for the insured, and strictly construed with respect to the insurance company. Wood on Ins. secs. 57, 59, and cases cited; *Prieger v. Exchange M. Ins. Co.* 6 Wis. 89; *Sawyer v. Dodge Co. M. Ins. Co.* 37 id. 503; *Hull v. N. W. M. L. Ins. Co.* 39 id. 397; *Wakefield v. Orient Ins. Co.* 50 id. 532, 540; *Wells Fargo Co. v. Pacific Ins. Co.* 44 Cal. 397; *Insurance Co. v. Wright*, 1 Wall. 468; *Franklin F. Ins. Co. v. Updegraff*, 43 Pa. St. 350; *Franklin F. Ins. Co. v. Brock*, 57 id. 74; *Aurora F. Ins. Co. v. Eddy*, 49 Ill. 106; *Niagara F. Ins. Co. v. Scammon*, 100 id. 644. If possible, effect must be given to every *clause, sentence, or word* of the policy, so as to carry out the true intention of the parties. Wood on Ins. sec. 57; *Stettiner v. Granite Ins. Co.* 5 Duer, 594. A policy of insurance upon a *building* covers every part of it, everything that in any measure forms an essential element of it. Wood on Ins. sec. 83. Where a number of buildings *are used for the same purpose by the same person* in the same enclosure, and together are called " a mill " or " factory," and the term applies to all collectively, a policy that describes the property " as contained in his factory " or " in his mill " will cover the property in *either or all* of the buildings. Wood on Ins. sec. 77; *Liebenstein v. Baltic Ins. Co.* 45 Ill. 301; *Bigler v. N. Y. Cent. Ins. Co.* 20 Barb. 635; *Meadowcraft v. Standard F. Ins. Co.* 61 Pa. St. 91; *Workman v. Ins. Co.* 2 La. (O. S.), 507; *Peoria M. & F. Ins. Co. v. Lewis*, 18 Ill. 553; *Blake v. Exchange Mut. Ins. Co.* 12 Gray, 265; *James River Ins. Co. v. Merritt*, 47 Ala. 387; *Cargill v. Millers' & M. Mut. Ins. Co.* 33 Minn. 90.

CASSODAY, J. The important question presented is whether the engine-room and the machinery therein destroyed by fire were covered by the policy. Much of the parol evidence offered on the part of *Mr. Roe* was excluded on the ground that the contract was in writing and the best evidence.

JANUARY TERM, 1888.                37

The Home Mut. Ins. Co. of California vs. Roe.

No evidence was offered on the part of the company.
What little evidence there was admitted in the case is un-
disputed.   It is to the effect that the planing-mill men-
tioned was on the south side of the mill pond; that, as a
matter of security, the engine-room was twenty-two feet
south of the planing-mill and contained the engine and
machinery that was burned; that there was a three and a
half inch wrought-iron shaft running from the planing-mill
and connected with the engine, which furnished the only
motive power for propelling the machinery in the planing-
mill; that the engine pulley was belted on to this connect-
ing shaft that ran the planing-mill, and this connection was
boxed up and covered in the mill; that there was a spout
or box two and one-half feet square, and ten feet above
the ground or roadway, connected with the machinery in
the planing-mill, through which the shavings produced
therein were drawn by suction or forced by an exhaust fan
into the engine-room; that there was no other connection
between the two buildings; that there was a roadway be-
tween the two buildings and under such shaft and spout;
that there were two or three machines connected in the
planing-mill with the main conductor; that the force pump
was run by water; that the engine-room was about twenty-
eight feet long and twenty-five feet wide; that the engine-
room was entirely consumed by the fire, together with the
belting, shafting, pulleys, and pump therein; that the con-
nection between the two buildings was twisted all out of
shape; that the spout through which the shavings were
drawn was burned and was worth about $15; that some
of the belting in the planing-room was cut in the excitement
of the moment at the time of the fire; that the value of the
machinery, pumps, shafting, belting, saws, tools, hose, etc.,
*in the engine-room*, including the connections, pulleys, en-
gine and boiler, was twelve or fifteen hundred dollars; that
the main building was burned some at the gable end facing

the engine-room, and the damage to it was about $75; that the total value of the machinery in the planing-mill and the belts and other property described in the policy in both buildings was about $6,000; that the fire occurred and caused the damage as stated; that the company was duly notified thereof; that its adjusting agent adjusted the damage to the planing-mill at $75, which the plaintiff refused to accept; that said adjuster refused to adjust the damage to the engine-room and the machinery therein destroyed, on the ground that they were not covered by the policy. There was no evidence of any addition to the planing-mill, other than the engine-room.

Upon these undisputed facts was the court justified in directing a verdict in favor of the plaintiff? Or should a verdict have been directed in favor of the company? Or were there any such conflicting inferences as to whether the policy covered the engine-room and the machinery therein, as required a submission of the case to the jury? Parol evidence was certainly admissible as to the character, nature and situation of the property insured, in order to place the court in the position of the parties at the time of making the contract of insurance. Had there been any dispute in any of these respects, the question would have been properly determinable by a jury. But there was no such dispute. The question therefore recurs whether there is any ambiguity or uncertainty in the language of the policy, when applied to the undisputed facts thus stated. Here the policy was for a certain amount on *Mr. Roe's* "one-story frame *planing-mill building and addition,* situate at Antigo," and for a certain other amount "on machinery, *including* shafting, gearing, belting, saws, tools, force-pump and hose *therein.*" A "mill" is defined to be "(1) An engine or machine for grinding or comminuting any substance; . . . usually having a word prefixed, denoting the particular object to which it is applied. . . . (2) The building, with

its machinery, where grinding or *some process of manufact-uring is carried on.*" *Webster.* "The original purpose of mills was to comminute grain for food, but the word mill is extended to engines or machines moved by water, wind, or steam, for carrying on many other operations." *Imperial.* Here, it conclusively appears, that the engine in the engine-room was the only motive power for propelling any of the machinery in either of the buildings. The engine was used for no other purpose. It was, therefore, an essential part of the mill. Without it, there would have been no complete mill. The insurance was upon the "*planing-mill building and addition,*" and upon the "machinery, including shafting, gearing, belting, saws, tools, force-pump and hose *therein.*" It is claimed that the engine-room cannot be construed to mean an "addition" to the "planing-mill building," because it does not join directly upon the same; but, as we have seen, they were both essential to the completion of the mill. The motive power was by means of pulleys, belts, and shafts transmitted from the engine in the engine-room to the machinery in the main building. And the waste shavings, etc., were conveyed from the latter building to the engine-room to generate heat to propel the engine. Thus the two buildings were not only connected, but the machinery in each was inseparable, while the whole continued to be a planing-mill. The words "planing-mill building" would seem to be broad enough to include the engine-room. The words of the policy, "planing-mill building *and addition,*" cannot be of less significance. Especially is this so in the absence of any proof of any other addition. True, *Mr. Roe* did not prove there was no other addition; but he did prove this one, and thereby established, *prima facie,* that the subject matter answered the designation in the policy. The buildings were not only connected as stated, but were both in the same curtilage, constructed for and devoted to the same general purpose

and none other. The fact that the premium paid was six per cent. for one year, is a circumstance in favor of this view rather than against it. Stress is laid upon the fact that the engine, which was the principal machine, was not specifically mentioned in the policy. But we are inclined to think that it was covered by the word "machinery," and that the other things were specifically enumerated for fear that they might not otherwise be included. These views, it is believed, are supported by several adjudications cited by counsel, which will be reported herewith, and not in conflict with any well considered case.

It seems to us that there was no ambiguity, nor uncertainty, nor conflicting inferences in the language of the policy, when applied to the undisputed facts stated. Had there been, the question might have been properly submitted to the jury. *Ganson v. Madigan*, 15 Wis. 144, 82 Am. Dec. 659; *Bedard v. Bonville*, 57 Wis. 274; *Fayin v. Connoly*, 25 Mo 94, 69 Am. Dec. 450. In a note to the last citation it is said by the learned annotator that "it is a firmly established and universally recognized rule of law that the construction of a written instrument is a question of law for the court. It is the duty of the court, in all cases where the question is simply the determination of the meaning of a written document, to declare its legal interpretation; and it is error to leave its construction to the jury." 69 Am. Dec. 454, where numerous authorities are cited in support of the rule, which is there said to be applicable to written instruments of every description. Thus it has been recently held in New York that "when the construction of a contract depends upon the language of the instrument itself, it is a question of law for the court, and a submission thereof to the jury is error." *Dwight v. G. L. Ins. Co.* 103 N. Y. 341. RUGER, C. J., there said: "It would seem from the authorities hereinbefore referred to that no question affecting the interpretation of contracts

can properly be submitted to a jury, except those arising upon conflicting evidence as to the terms of the agreement, or where extrinsic evidence raises some doubt over the identity of the subject matter or of the claimants thereunder." Page 353. This is deemed to be a correct statement of a rule of law applicable here. See, also, *Farnsworth v. Brunquest*, 36 Wis. 202; *March v. Allabough*, 103 Pa. St. 335; *Emery v. Owings*, 6 Gill, 191. We are forced to the conclusion that the direction of a verdict by the trial court was proper.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 36 N. W. Rep. 594.— REP.

