[No. 1239.]

## THE MERCHANTS' INSURANCE CO. v. THE NEW MEXICO LUMBER CO.

1. INSURANCE—WAIVER OF CONDITION.

Where an agent of an insurance company had notice that the condition in a policy providing that a clear space of one hundred feet should be kept around the insured premises, was being violated by the insured by stacking lumber, etc., within said space, but the insured had promised to comply with said condition by clearing said space, and shortly after such knowledge was conveyed to the agent, he wrote another policy on the same premises and with the same condition for maintaining the clear space, it will not be presumed that the agent intended to waive the condition for maintaining a clear space in the last named policy. An intention will not be presumed from mere possession of knowledge, there must be some evidence of an intention on the part of the agent to waive it.

2. SAME—AGENT'S AUTHORITY.

The local agent of an insurance company authorized to write policies for the company and collect premiums, and who sometimes adjusted small losses and upon reporting the same would be authorized by the company to settle and pay the loss, was not authorized to compromise a claim for loss upon a policy written by him, but which claim the company, upon notice of the loss, had repudiated and had instructed the agent to take no action in the matter, and a settlement made by the agent in which he agreed that the company would pay the loss in consideration of an additional premium paid by insured was not binding on the company. The agent could not waive a forfeiture already incurred, nor waive a breach of warranty in the contract of insurance after the happening of the loss unless he represented the company for that purpose.

3. SAME—CONSTRUCTION OF "CLEAR SPACE CLAUSE."

In a policy of insurance containing a condition for one hundred feet clear space around the insured premises, where there was a shed attached to the main building the measurement of the one hundred feet should be made from the shed and not from the body of the building.

4. SAME—RETURN OF MONEY PAID ON SETTLEMENT.

Where an agent of an insurance company after loss attempted to make settlement of claim and accepted payment of an additional premium from the insured, and the company repudiated the settlement and refused to receive the increased premium from the agent, the company need not tender to the insured the money paid to the agent.

*Appeal from the District Court of Arapahoe County.*

Mr. SYLVESTER G. WILLIAMS, for appellant.

Messrs. HARTZELL & STEELE, for appellee.

BISSELL, J., delivered the opinion of the court.

To discuss the sixty-five errors which the appellant has assigned and express an opinion about the various propositions of law which are supposed to be suggested by the record, and which may be said to be either directly or collaterally involved, would prolong this opinion beyond any reasonable limits. It will, therefore, be confined to the discussion of a few general questions which are decisive of the appeal, and an indication of the basis on which the cause must be tried.

The action was brought by the New Mexico Lumber Company against the Merchants' Insurance Company of Newark, on a policy of insurance issued in Denver on June 3, 1893, by Anthony Sweeney, who was then and for sometime theretofore had been the local agent of the company in Denver. The policy was written on what is known as the New York standard form, but contained a written warranty inserted at the time the policy was prepared and executed which is known to the insurance world as a clear space clause. It was substantially a warranty that a clear space of one hundred feet should be maintained between the property insured which was lumber, lath, and shingles, and any wood-working or manufacturing establishment, and that the space should not be used for the handling or piling of lumber for temporary purposes, tramways upon which lumber was not piled alone being excepted. It was agreed that a violation of the warranty should render the policy null and void. The principal defense was based on the alleged breach of this clear space clause. A statement of Mr. Sweeney's relation to the company, the extent and character of his authority and the

circumstances surrounding the execution and delivery of the policy are indispensable not only to an understanding of the case, but also as a basis for the application of the legal rules by which the rights of the parties must be measured. Mr. Sweeney was by virtue of the letter of appointment from the insurance company a local agent of the corporation with power expressly conferred to write insurance and deliver policies in Denver and its immediate vicinity. As the agent of the company, he was entrusted with policies already signed, which he filled out and delivered to parties with whom he did business from time to time, as the applications were accepted and approved by him. Under the letter of appointment his powers were only to be exercised in the city and its immediate environments. The question of the authority of the agent became one of pronounced importance at the trial of the case, and in the maintenance of their contention that his authority was broader than what was expressed in the letter of appointment, the plaintiffs offered testimony to the point that at divers and sundry times, Sweeney had issued policies in various other localities within the limits of Colorado, distant from Denver, and in various sections of the state, of which the company of course had notice, and which they had accepted and carried. This testimony was directed to that portion of the defense which denied the authority of the agent to issue the policy on the property in New Mexico. The lumber company had its mill, lumber, lath, and shingles which were insured near Azotea, New Mexico, and the insurance company contended that Sweeney had no right to issue a policy on property situate in that locality. The company never accepted the policy as will subsequently appear save as they might be concluded by the agent's acts. It appeared from the proof that Sweeney had written very considerable insurance on two properties located very near the same point; one belonged to the Biggs Lumber Company, and the other to the appellee.

Mr. Biggs was connected with that company and was also the president of the appellee. Sweeney had issued quite a

number of policies in various companies to these two corpo-
rations, covering their mill property and manufactured pro-
ducts which policies were in force at the time the one in suit
was delivered.   Prior to the date of the present policy and
on the 11th of May, Biggs the president of the New Mexico
company and McGinnity, its secretary, were in Mr. Sweeney's
office and had a discussion respecting the situation and con-
dition of the property.   It seems that a few days prior to
that time, Lee, one of the witnesses for the defendant, who
was special agent and adjuster for the National Insurance
Company of Hartford, which had a policy on one or both of
these properties, had been down inspecting the property.
Lee had a general authority from the Hartford Company and
his duties were to inspect property on which policies had
been written, to appoint agents for his own company and to
adjust losses for them as well as for other insurers.   Ac-
cording to Lee's testimony, when he inspected the property
he found that neither in the case of the Biggs Lumber Com-
pany, nor in the case of the New Mexico Lumber Company,
had the condition of the clear space warranty been observed,
and loose lumber and material were piled within less than
one hundred feet of the mill.   At this date the policy in suit
had not been written, but the other policies referred to were
outstanding, and as has been suggested many of them were
represented by Mr. Sweeney.   On receipt of Lee's report and
apparently as a result of it, this interview between Mr. Biggs,
Mr. McGinnity, and Mr. Sweeney was had.   The importance
of the conversation is somewhat emphasized by the further
consideration that the rate of insurance where this clear
space warranty was inserted and observed was $2\frac{1}{2}\%$ and where
the warranty was not inserted and not observed the rate was
$9\%$.   At this interview Mr. Sweeney stated that unless the
property was immediately put in condition and a clear space
of 100 feet left, he would charge them the full rate of $9\%$ or
cancel the policies and the companies would not carry the
insurance at the rate of $2\frac{1}{2}\%$ under existing conditions.   They
both then assured Mr. Sweeney that this should be imme-

diately done; that Mr. Biggs was returning that night to Azotea and his demands should be immediately and fully complied with. No particular report, attachment, or information seems to have been subsequently or otherwise given to Mr. Sweeney. Prior to the 3d of June, one of the policies carried on one of the properties of the appellee had been written by the Phœnix Insurance Company through Mr. Sweeney, but the Phœnix company ordered their policy canceled. McGinnity, the secretary of the appellee, thereupon made application to Mr. Sweeney for additional insurance and the policy in suit was prepared and delivered to him. Nothing was said between the parties at that time about the condition of the property and the only evidence of the intention of the company respecting the warranty comes from the insertion of the written clause which is found in the contract. It was accepted by the secretary without objection, and the principal question in the case comes from the alleged breach of that warranty.

The property was destroyed by fire on the 5th day of June, 1893, two days after the policy was written. Intermediate the issuance of the policy and the destruction of the property, the insurance company was without knowledge that the policy had been issued, and the report of the agent noting the issue was received at the office of the general manager in Chicago in the same letter which contained the report of the fire. Immediately on receipt of this letter advising the manager of the policy, and of the loss, telegraphic instructions were sent to Mr. Sweeney to take no action under the policy until further instructions. The exact reason for this is not apparent. One other policy had been antecedently placed by Mr. Sweeney on the stock and lumber of the Biggs company which the general manager ordered canceled. This may be of very little consequence so far as the New Mexico Lumber Company is concerned, because they were of course without knowledge of it, but it tends to support the contention of the insurance company that Mr. Sweeney was without authority to issue policies on prop-

erty in that territory, and that his actual authority was expressed in his letter of appointment, subject, perhaps, to its apparent enlargement by reason of his previous acts in writing policies. Immediately on the happening of the fire, several adjusters visited the scene of the fire to ascertain its extent, the probable value of the material destroyed, and the situation of the property at the time. These parties made diagrams of the mill as it had stood, the lumber as it had been piled, and the relation between the lumber and other manufactured products with reference to the mill proper, and particularly as bearing on the question whether the clear space warranty contained in probably many of the policies had been observed by the assured. Evidence was given by these witnesses tending to show that there had been a breach of the warranty, and that lumber and ties had been piled within considerably less than 100 feet of the mill, whether taken from one of its corners or from hoods or sheds connected with it, and really a part of the establishment. There would seem to be but very slight question as to the breach of the warranty. The plaintiff did not substantially controvert it, and it may be said that his reply practically conceded that there had possibly been a technical violation of the clause, to which admission they were probably induced by the fact that one of the parties in interest had affixed his signature to a diagram found in the record, which somewhat clearly demonstrated the violation. Counsel for the lumber company argues two somewhat inconsistent propositions respecting the matter; one, that there was no violation, and second, that if there was a violation of the condition, it was waived by the agent at the time the policy was issued. In the course of the opinion we shall comment on both of these positions. On the reports of the adjusters who visited the fire and inspected the property, the various insurance companies for a while contested their liability for the loss, and the matters proceeded by way of negotiation between the assured and the companies for several months. Finally, and in the Decem-

ber following, the various insurance companies seem to have come to an agreement of settlement with the assured, the basis of which was that the insured should pay the difference between $2\frac{1}{2}$ % and the rate charged when the warranty was not contained in the policy, to wit, 9%. Sweeney, assuming to act on behalf of the Merchants' Insurance Company, acceded to the proposition and agreed to carry it out for that company; thereupon the lumber company gave him a check for $130, which would be the difference between the actual amount paid, $50.00, and the rate which would have been charged had the policy been written without the warranty. When this was done Mr. Sweeney advised the general manager in Chicago of his act, debited his own account with the amount received, and credited himself with the various sums to which he was entitled. The company promptly repudiated the settlement, denied Sweeney's authority to make it, and refused to settle his account on that basis. The manager and the secretary of the company both testified that the company never accepted the money, and declined to settle Mr. Sweeney's accounts on that basis. The company offered the testimony of one of the administrators of Mr. Sweeney's estate with reference to the final adjustment of accounts between the insurance company and the Sweeney estate. The court ruled the testimony out, although the evidence of the secretary of the company on this subject was received without objection. In this connection it may be well to refer to a letter which is found in the record, although not in the abstract, and given very considerable prominence in the brief of counsel for the appellee, and to which they attach very great importance. It was written by Mr. Sweeney to Mr. Rogers, the manager, concerning this loss. It was written after the fire on the 8th of July; and is a very strong and urgent request on the part of Mr. Sweeney to recognize the liability of the company under the contract, and to settle the loss and pay the lumber company the full amount of the policy. It is wholly unnecessary to either comment on the letter and its general terms, or the

position of Mr. Sweeney with reference to this particular policy or his evident desire to procure its adjustment and settlement for people who had for many years been strong and valuable customers of his office. The only part of it of any significance or importance is that which refers to the knowledge he had respecting the condition of the property at the time the policy was issued. What he said about this matter is in the following language : " I knew of the condition of the property insured from Mr. Lee, who inspected this risk, and the Biggs Brothers' similar risks at Chama, only a few weeks before the fire and reported both to me—the Biggs ' A 1,' and this as not being in good order. I called up both Mr. Biggs (who happened to be in Denver) and Mr. McGinnity, to my office, and in the presence of Mr. Lee told both owners that unless the property insured was put in good condition at once, I would advance the rate to 10 per cent or cancel the policies. Mr. Biggs returned, and at once began putting the property in order as required. * * * " This is all the letter contains which bears on the case, and which is pertinent to the discussion of the law of waiver. In support of the lumber company's contention respecting the authority of Mr. Sweeney, and the claim that his powers were not simply those of a local agent with the right to effect insurance and receive premiums, and to that extend to bind the company, and that they were those of a general agent, all of whose acts should be binding and conclusive on the insurer, evidence was offered to the point that on various occasions after fires had occurred, Mr. Sweeney had adjusted the losses, made his report to the company, and had paid them and charged them up in his account. The farthest extent to which this testimony would tend to go would be to support the claim that under some circumstances he had the right to estimate and adjust the loss, without waiting for the intervention of a special adjuster, and on a report to the general manager of the company would be authorized to settle and to pay. The testimony was not very strong in this direction, because in most of the cases it would appear that the report

was made and Mr. Sweeney instructed to send on proofs, when the loss would be settled according to his report and representations. There was nothing in the case to show that he was a general adjuster for the company, or that as a rule he acted in that capacity, or that there was a departure from the practice which prevails in all companies, to send a general adjuster to inspect and determine the loss other than in those cases where very small amounts were involved. There was no evidence tending to show that Mr. Sweeney was a general agent of the company, unless that authority can be derived from proof of those special acts which have been referred to. Everything has been stated which is essential to a clear understanding of the case. We are quite inclined to suggest this limitation because the conditions under which the law of insurance is to be applied so constantly vary, and are affected by so many different circumstances and situations, that it is utterly impossible to so state a general proposition of insurance law that it is not liable to misconstruction unless it is read with reference to the particular case decided. While this is a general principle true in all cases, it is particularly true in this class of litigation. At the conclusion of the trial the defendant asked a very large number of instructions, and the court instructed the jury at considerable length. The defendant company asked some twenty-nine instructions, and the court gave some seven or eight, part of which embraced different propositions. Error is laid on the refusal of the court to instruct the jury as requested, and also on the instructions which the court gave. It is impossible for us to state all of them, or even to refer to them specifically. We are only able to state generally that many were asked which ought to have been given and some given which ought to have been refused. When we come to the discussion of the law, the principles laid down will point out the errors committed and enable the court on the subsequent trial to avoid them.

Very much of the difficulty which ordinarily surrounds an insurance case is eliminated by the character of that clause

of the contract on which the company principally relied for its defense. We are not at all concerned with the materiality of it or its importance to the insurer because the very object of this specific provision is to avoid any question between the parties respecting either its terms or its obligation. It is not a contract to be construed, and its length and breadth measured and determined and there is no question of hardship or of equity. It is a naked matter of agreement by which if it be in force the assured is himself bound, and if he has violated it he may not recover on his contract. There is no necessity to discuss the question of the existence of the agreement and its violation. On the pleadings and the proof as it now stands no verdict could be rendered which would be upheld which should find either that the clause was not within the contract or that it had not been violated.

The contract and its violation being assumed it only remains to be considered whether anything was done by one who had authority to represent the company in the matter about which he assumed to act and whether what he did as a mixed matter of law and fact would destroy the operative force of the agreement. The importance of the inquiry respecting the authority of the agent and the extent of his power will be clearly exhibited by a general suggestion of the tenor of the court's instructions on this subject and a suggestion of the position assumed by the defendant on the trial. It will probably render the discussion a little more perspicuous, if we briefly recall in this connection what the case shows about this matter and the force which the appellee attempts to give to the agents' acts. It will be remembered that on the 11th of May, the adjuster and inspector Lee reported to Mr. Sweeney the condition of the property and the failure on the part of both the Biggs company and the New Mexico Lumber company to maintain the clear space. An interview was immediately had between Mr. Sweeney, the president and secretary of the two companies, Biggs and McGinnity, and they were both informed that all the then outstanding policies represented by Mr. Sweeney

would be canceled or 9% premium charged unless the property was immediately put in proper condition. As representing the two companies both these parties agreed that this should be done and the terms of the warranty complied with. It was agreed that one of them should immediately return and do whatever was necessary to comply with the terms of the insurance contract. On June 3, when the policy in suit was executed nothing was said about the condition of the property and the warranty was written in. When the property was destroyed on the 5th of June the company through its general manager, Rogers, repudiated the agreement and the company thereafter so far as concerns its officers, its directory, or its general manager, never accepted the contract, admitted its validity, or agreed to pay it. Negotiations were thereupon immediately entered into between the adjusters and representatives of the various companies which carried the insurance wherein Mr. Sweeney participated looking to a settlement of the dispute and an arrangement whereby the validity of the various policies should be conceded and an equitable adjustment made of the differences between the insurers and the insured. These negotiations were prolonged for months and until the December following when the parties who were authorized to act on behalf of the other insurance companies came to an agreement, substantially that if the assured would pay the difference between the premium of $2\frac{1}{2}\%$ which had been paid and the 9% which was charged where the policies contained no such warranty, the companies would adjust the losses and pay the amount of the losses proven. Mr. Sweeney assumed to act on behalf of the Merchants' Insurance Company, saying that he represented them and would accept the arrangement. Thereupon the officers of the New Mexico Lumber Company paid him $130. To ascertain whether what was done by Mr. Sweeney would bind the company and permit a recovery, notwithstanding the terms of the contract of insurance and the established breach, the relation which Mr. Sweeney bore to the company must be carefully

examined and determined. It must be conceded the authority of an insurance agent is not always measured by the terms and limitations contained in his warrant of authority. Courts very properly hold that the authority of an agent is co-extensive with the business entrusted to his care. Parties dealing with an agent have a right to rely not only on the actual authority conferred by his warrant, but also on his apparent authority. It has, therefore, frequently been adjudged that an agent who is given authority to enter into contracts of insurance and who has policies in his possession signed by the officers of the company may have a much broader and more extensive authority for many purposes connected with insurance contracts than the very limited power conferred by his letter of instructions. Agents of this description are frequently held to have power to waive various conditions contained in the policy, permit changes of location, use of other modes of lighting the premises than those specified, authorize the carriage and storage of extra hazardous materials, and many other matters which ordinarily could not be done or consented to by a local agent with authority simply to take applications and receive premiums. The authority of the agent is also sometimes held to be enlarged by the power which he has exercised to the knowledge and with the consent of the company in other cases relating to the adjustment and settlement of losses. As we look at the case, these matters are not necessarily involved in this inquiry, though we have a right to use the adjudications on these and collateral matters for the purpose of ascertaining whether what Mr. Sweeney attempted to do was within the actual or apparent scope of his authority; whether the plaintiff had a right to rely on this real or apparent power, and whether what he did can be held to bind the company and to estop them from setting up this defense. It may very safely be assumed that no power will be presumed to be possessed by the agent, whether he be a special or a so-called general agent, which is either not actually or apparently within its limits. The great trouble is, courts

are totally unable to define what a special or what a general agent is in terms which shall make the definition applicable to each particular case, so that it by no means follows that when an agent is called a general agent he possesses certain power, and when he is called a special one, the power may not be taken to be within the limits of his authority. The powers of agents resulting from peculiar conditions, the force of particular limitations and the presumptions which may be legitimately indulged in because of his acts are very fully exemplified by the numerous authorities on this question. *Quinlan v. P. W. Insurance Co.*, 133 N. Y. 356; *Weed v. London & Lancashire Ins. Co.*, 116 N. Y. 106; *Ermentrout v. Girard Fire & Marine Ins. Co.*, 63 Minn. 305; *Bush v. Westchester Fire Ins. Co.*, 63 N. Y. 531; *Gould v. Dwelling-House Ins. Co.*, 90 Mich. 302; *Kyte v. Commercial Union Assur. Co.*, 144 Mass. 43; *Biggs v. Insurance Co.*, 88 N. C. 141; *Cross et al. v. Milwaukee Mechanics' Ins. Co.*, 92 Wis. 656; *Hankins v. Rockford Ins. Co.*, 70 Wis. 1.

From these authorities it is very clear it may not be inferred from what Mr. Sweeney did with reference to the Merchants' Insurance Company that he was a general agent and that the act which he attempted to perform in December subsequent to the fire was within the scope of his authority. The case exhibits many instances of small fires which were reported to the Merchants' Insurance Company during his agency, which Mr. Sweeney assumed the power to estimate and in one sense adjust. These he reported to the company and thereafter making and forwarding proofs was instructed to pay. The payments were apparently subject to the approval of the general manager. These acts undoubtedly might be proved to show the extent of the power possessed by the agent and would under some circumstances be of strong, if not persuasive force, in determining whether the space clause was waived at the time the policy was issued. But in the light of the evidence in this direction it is of slight consequence because as a matter of law what was done by Sweeney when he issued this policy did

not waive the space clause. It must be conceded that on the 11th of May he was told of the condition of the property. The agent may, with some inexactness, be said to have had this knowledge at the time the policy was issued. But the question still remains, what force and effect is to be given to that knowledge. We cannot hold that this knowledge acquired on May 11, was present to Mr. Sweeney's recollection on June 3, nor can we hold that knowing it, this fact raises a presumption of a waiver of the warranty. The knowledge was obtained prior to the making of the present contract, and when the information was received there was an express agreement made by the representatives of the company to put the property in the condition required by the warranty. Because he had knowledge on the 11th of May that there was a breach of a condition contained in the outstanding policies, we may not presume an intention on his part to waive the condition when he inserted it in the policy issued on the 3d of June. If the policy had been issued on the 11th of May and there had been no promise to put the property in condition then there might be a presumption. We are not at liberty however to presume from his knowledge of the situation on the 11th of May, that when he inserted an express condition that the space should be kept clear, he was without the intention to make it a binding part of the contract. The one presumption cannot be based on the other, nor is it a natural presumption from the situation and condition of affairs. *Ward v. Metropolitan Life Ins. Co.*, 66 Conn. 227.

It is equally true that an intention may not be presumed from the mere possession of knowledge. There must be some evidence in the case tending to show an intention on the part of the agent to waive it. *Stone v. Howard Insurance Co.*, 153 Mass., 475 ; *The Concordia Fire Ins. Co. v. Johnson*, 4 Kan. 7 ; *Devens v. Mechanics' & Traders' Ins. Co.*, 83 N. Y. 168.

The defendant asked many instructions to this point, which with a good deal of accuracy and some perspicuity, stated

the law as we announce it. We find nothing in those which the court gave which covered this subject and we think the court erred in refusing to give them. It is exceedingly doubtful whether the third instruction respecting the belief of the plaintiff with reference to the apparent authority possessed by the agent, was applicable to the case. There was nothing to show that the plaintiff had any knowledge whatever on the subject, and therefore, the question of his belief was totally unimportant and foreign to the case.

We now come to the principal question in the case. It is very closely allied to the one already discussed and must be settled by the ascertainment of the authority of the agent and the force and effect of his acts. The discussion which has been already had respecting the authority of an agent, the methods to be pursued to determine it, and the legal conclusion which may be drawn from the proof on this matter, must be borne in mind while we discuss this particular question. It may be aptly characterized as one respecting the position occupied by the agent, Mr. Sweeney. The inquiry is, was he a special or was he a general agent, and if either, was the thing which he did within the apparent scope of his authority, and is the company bound by what he did, and thereby estopped to assert the breach, which being established was a perfect defense to the suit. It will be remembered that Mr. Sweeney's agreement to waive the warranty is to be found in what he did months after the loss occurred. During all the intervening time the company had refused to be bound by the policy. There had been no adjustment of the loss, the company had directed Mr. Sweeney not to settle it. The general manager, Rogers, had declined to be bound by it, or accept it as an existing obligation, and the secretary of the company at Newark took the same position. It is therefore true that during all this time the lumber company was advised of the contention of the insurance company. This case then differs very largely from other cases in which in reliance on the statements of the agent, the parties have proceeded with negotiations with respect to proofs of loss and

other matters and have incurred expenditures which have been sometimes held to furnish a new and adequate consideration for an agreement made by an agent after a loss and in respect to matters which might not otherwise be taken to be within the scope of his authority.   We have been referred to no case, nor have we been able to find any in our researches which goes to the extent of holding that an agreement to waive a forfeiture already incurred, and to waive a breach of a warranty contained in the contract of insurance could be made by an agent after the happening of a loss, unless the agent *pro hac vice* represented the company.   It is this condition which occasions the difficulty with the instructions which the court gave on the subject of agency. The jury were told that a general agent of the company had a right to waive a forfeiture and if Sweeney was the general agent of the company, he had authority to accept the payment of the additional premium and thereby bind the company to pay the loss notwithstanding the forfeiture.   We do not need to abstract or state the instructions on this subject nor those asked by the defendant which correctly defined the rights of the company and the limitations on the power of the agent.   It is enough to say that there was nothing in the testimony which tended to show that Mr. Sweeney was a general agent possessing such unlimited powers, whose acts and negotiations following the loss and carried on for months afterwards, and in the face of the protest by the officers and general manager of the company respecting their liability, would be binding on the company and operate as a waiver.   There have been some cases which considered the question of the authority of the agent after a loss has happened, and they universally recognize the distinction between the powers of an agent after loss, and the powers which he may possess by actual appointment, or by inspection of the property at the time the policy is issued, or probably during its life and up to the time the loss happens.   *Queen Insurance Company* v. *Young*, 86 Ala. 424; *Smith* v. *The Niagara Fire Ins. Co.*, 60 Vt. 682; *Bowlin* v. *Hekla Fire Ins. Co.*, 36

Minn. 433; *Western Assur. Co.* v. *Doull et al.*, 12 Canada Sup. Ct. Rep. 446.

There are many matters which agents may under some circumstances waive. It has been held that there may be a waiver of the proof of loss and of the time during which suit may be commenced and other exceptions which it is not needful to notice. The present case presents no such condition. The property was insured on the 3d, destroyed on the 5th, and immediately thereafter the agent was notified by the general manager to take no action on the policy until further instructions. This was on the 13th of June. There is nothing in the case to show that the lumber company or its officers were in any wise advised that Sweeney had any extraordinary power which would authorize him to make a contract for the settlement of the loss, or to agree to accept the additional premium and bind the company. There is nothing which shows or tends to show that Mr. Sweeney was possessed of a general agent's authority broad enough in its limits to include the performance of these acts of compromise. The trouble is, it is totally impossible for a layman to understand the difference between a special and a general agency. The word "general" has a very broad significance to the lay mind. When we recognize the difficulty which courts experience in their attempts to determine what is a general agent and the extent and limit of his powers, it can be very readily seen that the use of that term would tend to mislead the jury and they would naturally infer the agent had a greater authority than the law would imply without an express grant of it. It can hardly be said that he was a general agent, but if he was, he was not a general agent with authority to waive the forfeiture after loss. If his agency was broad enough, either when the policy was issued or during its life, to permit him to waive the warranty, there is nothing in the record by which an intention on his part to waive it was established, nor anything from which it can be legally and justly presumed. The instruction that a general agent has authority to waive a forfeiture and if the jury should find that

Sweeney was a general agent, they were at liberty to conclude that he had authority to make the settlement and accept the additional premium, was clearly erroneous.   He was no such agent, possessed of no such authority, nor is there anything in the record to justify a belief by the New Mexico Lumber Company that he had it.   As we have already said none of the matters proven or all of them together would make Mr. Sweeney a general agent of the company with authority to bind them by a compromise of this description without proof of a change in the condition of the assured, which would either constitute a new consideration or show that he was misled to his prejudice whereby the company would be estopped to set up this defense.

The court instructed the jury that if they believed from the evidence that when the policy was issued, Sweeney was a general agent and had actual knowledge of the condition of the property insured and knew that the warranty was not observed the space clause was waived because of that knowledge.   This was error because there was no evidence in the case which warranted it.

Among the numerous assignments is one laid on the refusal of the court to instruct the jury respecting the condition of the mill property and the relation of the piles of lumber to the one hundred foot clause and the basis on which that limit was to be determined.   In other words, there was evidence to show that there was within that one hundred foot space piles of lumber and ties, whether the point be taken from a permanent corner of the mill, or from that which was a part of it, being a shed or hood attached to it, and really a part of the structure.   The company asked an instruction that the distance should be estimated from the hood or shed attached to the mill and not necessarily from a permanent corner.   This was clearly right and the jury should have been so instructed although as the evidence now stands it would not seem to be a matter of very grave importance.   *Home Mutual Insurance Co. v. Roe*, 71 Wis. 33.

Some point is made on the proposition that there was no

offer on the part of the company to return the premium which had been paid to Mr. Sweeney. We do not so understand the terms and effect of the conditions contained in the policy. It may sometimes happen that if a company attempts to cancel a policy, it is bound to return the premium in order to insist on the invalidity of the contract, but this does not seem to be that kind of a case. The contention is that the company was bound to return whatever had been paid in order to make the defense available. This does not even generally seem to be true. *Blaeser v. Milwaukee Mechanics' Mutual Ins. Co.*, 37 Wis. 31; *Insurance Company v. Willis & Bro.*, 70 Texas, 12.

It can hardly be true in the present case because they never got the $130 which was a portion of the established premium when the warranty was left out of the policy. It was paid to Mr. Sweeney in his attempt to make a compromise but the company refused to receive it, asserted that he had no authority to take it and never accepted it. This is not at all inconsistent with the position which the company assumed. The company insisted that Sweeney had no right to make the compromise, did not represent them when he received the premium and they declined to take it, and there is nothing in the record to show that its acceptance by Sweeney in any way bound the company, made the payment to him a payment to them and obligated them to return what they had never received. We cannot see that the rejection of the evidence respecting the settlement between the administrator of Mr. Sweeney's estate and the company was at all material and its rejection therefore error. It would perhaps have tended to bring out a little more clearly the exact situation, but it was made sufficiently apparent that the money was never received by the company and as this was sufficiently otherwise established we cannot discover that the company was harmed by its rejection.

We have been asked in this, as in one or two other cases to determine the force and effect of the clause in the policy which provides that there can be no waiver of any condition

contained in it except by an indorsement in writing indorsed on the back of it.   There is so much divergence among the authorities in different states on this question that although the writer of this decision has a very pronounced opinion about it, it is deemed best not to decide the precise question because it is not absolutely essential to the determination of the case and the policy of the state in that direction has not yet been determined.   Counsel's brief suggests numerous other questions, the settlement of which would doubtless be useful in other insurance litigations, but since what we have determined is decisive of the controversy and adequately settles this appeal, we must be excused from further prolonging a very wearisome and necessarily prolix discussion.

For these errors the judgment will be reversed and the case remanded for a new trial in conformity with this opinion.

*Reversed.*